UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANA D. MOHAMMADI, | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:12-CV-00042-DAE |
| | § | |
| vs. | § | |
| | § | |
| AUGUSTINE NWABUISI, ROSE | § | |
| NWABUISI, RESOURCE HEALTH | § | |
| SERVICES, INC. d/b/a RESOURCE | § | |
| HOME HEALTH SERVICES, INC., | § | |
| and RESOURCE CARE | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT; (2) GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

On April 29, 2013, the Court heard oral argument on the Motion for

Summary Judgment filed by Rose Nwabuisi, Augustine Nwabuisi, Resource Care

Corporation, and Resource Health Services, Inc. (collectively, "Defendants")

(doc. # 33); and the Motion for Partial Summary Judgment filed by Plaintiff Dana

Mohammadi (doc. # 34).  After considering the supporting and opposing

memoranda, and in light of the parties' arguments at the hearing, the Court, for the

reasons that follow, **GRANTS IN PART AND DENIES IN PART** Defendants'

Motion for Summary Judgment (doc. # 33) and **GRANTS** Plaintiff's Motion for

Partial Summary Judgment (doc. # 34).

1

BACKGROUND

Resource Health Services, Inc. d/b/a Resource Home Health Services, Inc. and Resource Care Corporation are Texas-based corporations that provide a range of in-home healthcare services, including the provision of nurses.  (Doc. # 33 ("Defs.' MSJ") ¶ 1.)  Both corporations are wholly owned by Defendant Rose Nwabuisi ("Ms. Nwabuisi"), who is also the Nurse Administrator in charge of the nurses.  (Id.; doc. # 34-3 ("Nwabuisi Dep.") at 55–56.)  Defendant Augustine Nwabuisi ("Mr. Nwabuisi") is the CEO of both corporations.  (Defs.' MSJ ¶ 1.) The two corporations employ over 500 employees, and annual revenues exceed $5 million.  (Nwabuisi Dep. at 24.)  For the purposes of this Order, both corporations will be referred to collectively as "Resource."

Plaintiff Dana Mohammadi f/k/a Dana Nassouri was employed by Resource as a licensed vocational nurse ("LVN") from approximately June 2009 through approximately October 2011.  (Doc. # 24 ¶¶ 4.2–4.3.)  LVNs like Plaintiff are paid an hourly rate and are expected to work from 8:30 a.m. to 5 p.m., with 30 minutes for lunch.  (Defs.' MSJ ¶¶ 4, 8.)  Resource tracks LVNs' hours using a time card system.  (Id.)  If an LVN performs a home visit outside the regular workday, he or she is paid a flat fee per visit and is required to complete a Patient Visit record detailing all information concerning the patient and the visit. (Id. ¶¶ 6–7.)

In March 2010, Resource loaned Plaintiff $3,500 "for a personal loan." (Doc. # 34 ("Pl.'s MPSJ") Ex. F.)  On October 26, 2010, Resource loaned Plaintiff an additional $1,700 "for [a] personal emergency." (Id. Ex. G.)  Each time, the terms of the loan were memorialized in forms entitled "An Agreement to Loan Money or Advance Wages from the Company." (See id. Exs. F, G.)  Those forms included provisions authorizing Resource to withhold portions of Plaintiff's wages in order to repay the loans. (See id.)

In November of 2010, Plaintiff voluntarily resigned from Resource to pursue another job. (Defs.' MSJ ¶ 10; doc. # 34-3 at 32.)  On or around September 2011, approximately ten months after she left Resource, Plaintiff contacted Ms. Nwabuisi and requested to be rehired. (Defs.' MSJ ¶ 12.)  Ms. Nwabuisi rehired Plaintiff in the Austin office, where she started on October 3, 2011. (Id. ¶¶ 12–13.)  On October 31, however, Plaintiff was terminated. (Id. ¶ 14.)  Defendants claim that Plaintiff was fired because she failed to come to work and made excuses that inconvenienced other employees (id.); Plaintiff claims that she informed Defendants that she was undergoing "oral surgery for a serious dental condition" and later "learned she had been fired, most likely for taking a brief medical leave from her position." (Doc. # 35 at 21.)  The paycheck that Plaintiff received for the pay period of October 1–15, 2011, totaled just $0.90, because Defendants deducted $1,322.00 from Plaintiff's wages. (Id. Ex. Q.)

3

In the fall of 2011, Plaintiff filed two claims with the Texas Workforce Commission.  The first sought unemployment benefits; the second was for uncompensated wages, mileage reimbursements, and unpaid overtime compensation.  (Id. at 21–22.)  When Plaintiff retained counsel, however, she withdrew her wage claim with the TWC "in order to avoid claim preclusion and to seek the full amount she is entitled to under the FLSA."  (Id. at 22.)

On February 2, 2012, Plaintiff brought an action in this court, alleging that Defendants had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the Texas Minimum Wage Act ("TMWA"), Tex. Lab. Code. § 62.001 et seq.; and state contract law.  (Doc. # 7.)  Plaintiff filed an Amended Complaint on June 4, 2012, to add a retaliation claim based on allegations that Defendants had "blackballed" her by giving negative performance reviews to potential employers.  (Doc. # 24 ("FAC") ¶¶ 6.1–6.5.)  The FAC alleged (1) that "Defendants did not pay Plaintiff her promised hourly rate for each hour she worked"; (2) that "Plaintiff was not paid the federally mandated minimum wage for each hour she worked"; (3) that Plaintiff was not paid overtime for the hours she worked in excess of forty hours per week; and (4) that Defendants retaliated against Plaintiff for filing this lawsuit.  (Id. ¶¶ 4.4–4.7, 4.11–4.12.)

Defendants filed their Amended Answer on October 17, 2012

(doc. # 32), and a Motion for Summary Judgment on November 16, 2012

(doc. # 33).

Plaintiff filed a Motion for Partial Summary Judgment on the same

day.  (Doc. # 34.)  Plaintiff's Motion requested that the Court grant Plaintiff

summary judgment on the following issues:

1) Whether or not, as a matter of law, Plaintiff is entitled to overtime compensation and liquidated damages;
2) Whether or not, as a matter of law, Rose Nwabuisi is individually liable;
3) Whether or not, as a matter of law, Augustine Nwabuisi is individually liable; and
4) Whether or not, as a matter of law, Defendants' violation of the FLSA was willful, thereby entitling Plaintiff to claim damages for a three-year period.

(Id. at 2.)

## STANDARD OF REVIEW

Summary judgment is proper when the evidence shows "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 251–52 (1986).  The main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323–24 (1986).

The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Id. at 323.  If the moving party

meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Houston, 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

I.    Defendants' Motion for Summary Judgment

       A.  FLSA Minimum Wage Claim

              Plaintiff alleges that Defendants violated 29 U.S.C. § 206(a) when they willfully failed to pay her at least the federally mandated minimum wage for each hour she worked in a workweek.  (FAC ¶ 5.3.)  Plaintiff bases this claim on a

paycheck she received for the pay period of October 1, 2011–October 15, 2011.

(Doc. # 35 at 16; id. Ex. Q.)  Plaintiff worked at least 60.07 hours during those two

weeks.  (Id. at 16.)  However, because Defendants deducted $1,322.00 from

Plaintiff's wages, her paycheck totaled just $0.90.  (See id.)  As a result, claims

Plaintiff, she was compensated at a rate of just $0.01 per hour.  (Doc. # 35 at 16.)

Defendants do not contest that Plaintiff's paycheck was for just $0.90;

however, Defendants insist that the money was withheld from Plaintiff's paycheck

"pursuant to the contractual arrangements to reduce her loan balance with

Resource."  (Defs.' MSJ ¶ 37.)  Defendants assert that a condition of Plaintiff's

return to employment with Resource was that she repay her debt to Defendants.

(Doc. # 33-6 ("Ms. Nwabuisi Decl.") ¶ 7.)  The loan documents Plaintiff signed

stated that Resource "may deduct money from [Plaintiff's] pay from time to time"

to make "installment payments on loans or wage advances given to [Plaintiff] by

[Resource]" and that "if there [was] a Balance remaining when [Plaintiff] le[ft] the

Company, the last paycheck . . . may be withheld to offset the Balance of money

owed . . . ."  (See Pl.'s MPSJ Exs. F, G.)  Defendants claim that "this pay check

was insufficient to cover the entire loan" but that "Resource wrote off the balance."

(Defs.' MSJ ¶ 37.)

Plaintiff, however, contends in her sworn affidavit that repaying the

loans was not a term of her being rehired.  (Doc. # 35-1 ("Pl.'s Nov. 29

Decl.") ¶ 13.)  Moreover, Plaintiff asserts that she has fully repaid both loans.

(Doc. # 33-3 at 11.)  In light of Plaintiff's sworn statements, there is a genuine

dispute of material fact regarding whether or not Defendants were authorized to

deduct $1,322.00 from Plaintiff's paycheck—and, accordingly, whether or not

Defendants paid Plaintiff the minimum wage for this pay period.  Therefore,

summary judgment on this claim is denied.

   B.  FLSA Overtime Claim

          Plaintiff alleges that Defendants violated 29 U.S.C. § 207 when they

willfully failed to pay her overtime for each hour that she worked in excess of forty

hours in a workweek.  (FAC ¶ 5.4.)  Plaintiff's overtime claim is based on: "(1)

overtime hours worked that are reflected in Plaintiff's time cards that are

uncompensated in Plaintiff's pay checks"; (2) "uncompensated work time

associated with responding to calls during evenings and weekends to coordinate

patient visits"; (3) unpaid compensable time spent engaging in marketing activities

with Defendants and attendance at events at Defendants' request; and (4) "unpaid

hours spent performing provider visits."  (Doc. # 35 at 2.)  Defendants move for

summary judgment on this claim, arguing that Plaintiff has not substantiated her

claims that she worked any overtime hours.  (Defs.' MSJ ¶¶ 3, 8–10, 15–22.)  As

described in more detail below, however, Defendants have not met their burden of

showing that there is no genuine issue as to whether Plaintiff worked more than 40

hours in a week.  In fact, quite the opposite is true: Plaintiff has shown that there is no genuine dispute that, on at least some occasions, she <u>did</u> work more than 40 hours per week.

      1.  <u>Overtime Under the FLSA</u>

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The Act defines "employ" as including "to suffer or permit to work."  29 U.S.C. § 203(g).  "The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities."  <u>Chao v. Gotham Registry, Inc.</u>, 514 F.3d 280, 285 (2d Cir. 2008) (citations omitted).  "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."  <u>Id.</u>

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work

for which she alleges she was not compensated." Harvill v. Westward Commc'ns,

L.L.C., 433 F.3d 428, 441 (5th Cir. 2005); see also Reeves v. Int'l Tel. and Tel.

Corp., 616 F.2d 1342, 1351 (5th Cir. 1980) (holding that FLSA plaintiff must

show, "with definite and certain evidence, that he performed work for which he

was not properly compensated"), abrogated on other grounds by McLaughlin v.

Richland Shoe Co., 486 U.S. 128 (1988).  As the Supreme Court has explained:

> [A]n employee has carried out his burden if he proves that he has in fact
> performed work for which [she] was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that work as a
> matter of just and reasonable inference.  The burden shifts to the employer to
> come forward with evidence of the precise amount of work performed or
> with evidence to negative the reasonableness of the inference to be drawn
> from the employee's evidence.  If the employer fails to produce such
> evidence, the court may then award damages to the employee even though
> the result may only be approximate.

Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 687–88 (1946)).

"Evidence of hours worked need not be 'perfectly accurate' as long as it provides

'a sufficient basis to calculate the number of hours worked by each employee.'"

Colindres v. QuietFlex Mfg., 427 F. Supp. 2d 737, 752–53 (S.D. Tex. 2006)

(quoting Marshall v. Mammas Fried Chicken, Inc., 590 F.2d 598, 598 (5th Cir.

1979)).

    2.  Resource's Overtime Policy

        Plaintiff has produced a copy of Resource's written Payroll Policy,

which states: "This Organization does not pay overtime (to providers) or time and

a half.  It is within your rights to choose not to work overtime.  All hours worked over forty hours (office employees) will be paid as none [sic] overtime hours."  (<u>See</u> doc. # 34-6.)  Defendants do not deny that this is a true and accurate copy of the Payroll Policy; instead, they insist that this aspect of the payroll policy did not apply to Plaintiff, who Defendants claim was "a nurse and . . . not a 'provider.'"  (<u>See</u> doc. # 36 ¶ 6; <u>see also</u> Nwabuisi Decl. ¶ 5.)  In other words, some of Defendants' statements insinuated that Plaintiff, as a nurse, was indeed paid at a rate of time-and-a-half for any overtime hours she worked.

In light of the other materials Defendants themselves produced, however, it is clear that what Defendants mean is <u>not</u> that Resource pays nurses overtime whenever they work more than 40 hours per week; it is that Resource pays a nurse overtime <u>only if that nurse obtained written authorization from management to work those hours</u>.  Defendants' own Exhibit 3, which is a summary of "importan[t]" company policies, states: "The company does not pay over time [sic].  Anyone staying over after [sic] hours or before hours must get authorization from management in writing."  (Doc. # 33-9; <u>see also</u> Defs.' MSJ ¶ 19 ("[Plaintiff] is not a provider but an LVN.  Resource does not allow overtime for LVNs except with managerial written consent.").)  In other words, if a nurse works overtime

hours without such prior authorization, he or she is not paid at a rate of

time-and-a-half.  (<u>See</u> Nwabuisi Dep. at 109–113.[1])

        While an employer does not violate the FLSA merely by discouraging

employees from working overtime or by requiring employees to request overtime

hours, <u>see</u> <u>Von Friewalde v. Boeing Aerospace Operations, Inc.</u>, 339 F. App'x 448,

459 (5th Cir. 2009) (rejecting "the notion that an employer does not have the right

to require an employee to adhere to its procedures for claiming overtime"), having

such a policy does not immunize an employer from responsibility for paying

overtime <u>if the employer knows or should know that the employee is, in fact,</u>

<u>working overtime hours</u>.  <u>See</u> <u>id.</u> at 460 (holding that an employer's "policy against

unauthorized overtime offer[ed] no defense" where "his managers were clearly

aware that [the employee] was working overtime"); <u>Newton v. City of Henderson</u>,

47 F.3d 746, 748 (5th Cir. 1995) ("An employer who is armed with [knowledge

that an employee is working overtime] cannot stand idly by and allow an employee

---

[1] "Q: What would happen if somebody did work overtime?  A: They have to get permission to work overtime.  Q: Uh-huh.  And if they worked overtime how would they be paid?  A: I will not answer that.  Q: Do you know the answer to that question?  A: I know the answer.  They would be paid the time that they have. They don't have any need to work overtime. [. . .] Q: So if somebody worked over 40 hours in a week they would be paid overtime?  A: With authorization.  Q: If they—if they were working without authorization, then they wouldn't be paid?  A: They have no need to do that. [. . .]  Q: When you say they have not had the need to do that, does that mean it's never ever happened in the entire existence of the organization?  A: To the best of my knowledge they work their normal eight hours."

to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.") (alteration in original; citation and internal quotation marks omitted); 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed . . . . The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.").  Accordingly, Plaintiff is entitled to overtime compensation for any overtime hours Defendants knew or should have known she worked.

    3.  <u>Defendants Had Actual or Constructive Knowledge That Plaintiff Worked More than 40 Hours During Some Weeks</u>

Apparently recognizing that Plaintiff is entitled to overtime compensation for hours about which they had actual or constructive knowledge, Defendants argue not that Resource <u>did</u> pay Plaintiff overtime but that Plaintiff "cannot show with definite and certain evidence that she actually worked any unpaid overtime" or "that Resource knew or should have known about this alleged overtime."  (Defs.' MSJ ¶ 27.)  As described in more detail below, however, there is no genuine dispute that Defendants knew or should have known that Plaintiff, at least on some occasions, worked more than 40 hours per week.

Defendants insist that Plaintiff has submitted no time cards demonstrating that she worked in excess of 40 hours per week.  (Id. ¶ 29.) However, Plaintiff has submitted a sampling of time sheets and payroll checks that indicate that she worked more than 40 hours during various weeks and yet was paid at her normal rate for those extra hours.  For example, reducing the time clocked each day by thirty minutes for a lunch break, Plaintiff clocked a total of 83.25 hours during the weeks of May 17–21 and May 23–29, 2010 (see doc. # 33-10 at 18; doc. # 35-3 at 2).  The corresponding paycheck, however, indicates that Plaintiff was paid at her normal rate of $17.31 per hour even for the overtime hours she worked, not at time-and-a-half.  (Doc. # 35-3 at 13.)  Similarly, according to the time cards that Defendants submitted, Plaintiff clocked a total of 42.25 hours for the week of June 7–11.  (Doc. # 33-10 at 19.)  Again, however, the corresponding paycheck indicates that she was paid for all hours at her normal rate. (Doc. # 35-3 at 14.)  While hand-written alterations to some of Plaintiff's other time cards make it difficult to discern exactly how many hours Plaintiff clocked in those weeks (see, e.g., id. at 9, 11), many of the paychecks she submitted indicate that she was paid for more than 40 hours each week but never at an overtime rate. (See, e.g., id. at 12, 16.)  In any case, Defendants—who presumably have easier access to the relevant documents—have not argued or presented any evidence to

suggest that the time cards or payroll documents Plaintiff has produced are inaccurate.

Defendants claim in their pleadings that Plaintiff never complained about the wages allegedly missing from her paycheck.  (MSJ ¶ 11; doc. # 36 ¶ 3(c), (h).)  However, Defendants have submitted no sworn declarations in support of that contention.  Plaintiff, on the other hand, asserts in her sworn declaration that she "spoke with Defendant Rose Nwaibuisi [sic] approximately a dozen times regarding not being paid for overtime hours worked" and was told "not to worry, that [she] would be compensated for [her] labor."  (Pl.'s Nov. 29 Decl. ¶ 12.)

Even assuming that Plaintiff never explicitly requested overtime compensation, however, Defendants' claims that they were unaware of any overtime hours that Plaintiff worked are insufficient to prevent summary judgment against them on this issue.  As already described, Plaintiff had submitted to Resource at least three time cards, using Defendants' own clock-in/clock-out system, that showed that she worked more than 40 hours in a week.  There is no dispute that those same cards were then used to calculate her pay: Even Defendants' own Exhibit 4, which is a summary of the hours Plaintiff worked and the hours for which she was compensated, states clearly that Plaintiff more often than not worked more than 40 hours each week.  (See doc. # 33-10 (indicating in a

column titled "# of hrs for pay period" that Plaintiff almost always worked 88

hours every two weeks).)

This is not a case in which an employee secretly worked overtime

hours and never recorded them on her time sheets.  Cf. Brumbelow v. Quality

Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming judgment for employer

because employee was estopped from claiming that she had worked more hours

than she claimed in her time sheets); Forrester v. Roth's I.G.A. Foodliner, Inc., 646

F.2d 413, 414 (9th Cir. 1981) (affirming summary judgment for employer because

employee did not demonstrate that employer should have known that he worked

more hours than those claimed on his time sheets).  Instead, Defendants had plain

and clear evidence, in the form of Plaintiff's automated time cards, that Plaintiff

had worked more than 40 hours during at least some weeks.  Plaintiff's paychecks

compensated her for more than 40 hours per week (though not at overtime rates),

indicating that Resource was, indeed, aware that Plaintiff had worked more than 40

hours.  Even assuming Plaintiff did not complain about overtime compensation,

therefore, there is no genuine dispute that Defendants knew or should have known

that Plaintiff had worked more than 40 hours in some weeks.  See Brennan v. Gen.

Motors Acceptance Corp., 482 F.2d 825, 827 (5th Cir. 1973) (holding that a court

"need only to inquire whether the circumstances of the present case were such that

the employer either had knowledge . . . or else had the 'opportunity through

reasonable diligence to acquire knowledge'") (quoting <u>Gulf King Shrimp Co. v.</u>
<u>Wirtz</u>, 407 F.2d 508, 512 (5th Cir. 1969)).

   Plaintiff also asserts that she worked many hours each week that were
not reflected in her time cards and for which she was not paid overtime.
(Doc. # 34-2 ("Pl.'s Nov. 8 Decl.") ¶ 9.)  First, Plaintiff insists in her sworn
declaration that she "made approximately five [home] visits before normal
business hours . . . eight to ten visits after normal business hours, and four to five
visits each weekend" (<u>id.</u>)—on average, over ten more each week than Defendants
paid her for.  (Pl.'s MPSJ at 8.)   In light of the foregoing, Plaintiff asserts that she
"routinely worked from approximately 7:00 am to 9:00 pm or 10:00 pm from
Monday to Friday during [her] employment with Defendants."  (<u>Id.</u> ¶ 12.)
Moreover, even though Defendants paid a flat fee of $25 or $30 per home visit,
Plaintiff asserts that this flat fee (Defs.' MSJ ¶¶ 6–7.), when divided by the actual
number of hours she worked, "was substantially less than one-and-a-half times her
regular rate."  (Pl.'s MPSJ at 8.)

   Plaintiff also asserts in her sworn declaration that Defendants gave her
a company-issued cell phone that rang multiple times per day, including before and
after her normally scheduled 8:30 a.m.–5:00 p.m. shift and on the weekends.  (Pl.'s
Nov. 29 Decl. ¶ 4.)  Plaintiff asserts that she was not compensated for the time she
spent answering these calls.  (<u>Id.</u>)  "On Saturdays and Sundays," she asserts, she

"was on call twenty-four hours per day to respond to individual's [sic] urgent calls"; and she estimates that she worked "between six and eight hours each weekend . . . ."  (Id.)  Finally, Plaintiff claims that she was not paid overtime for hours spent, inter alia, attending marketing events with Defendants and driving Defendants to and from the airport.  (Pl.'s Nov. 8 Decl. ¶ 8.)

        In response, Defendants insist that Plaintiff was paid for all patient visits she performed.  Defendants point out that LVNs are required to submit Patient Visit Records for each patient visit they perform; they insist that Plaintiff submitted many such records (see Ms. Nwabuisi Decl. Ex. 5) and "was paid for all patient visit[s] pursuant to every Patient Visit Record[] [she] submitted . . . ."  (Defs.' MSJ ¶ 29.)  Defendants argue that Plaintiff never complained about not being paid while she worked for Resource or even after she voluntarily resigned but "now contends or 'remembers' through speculation that there are some 1800 hours from June 2009 to November 2010 where she worked overtime" without compensation.  (Id.; Nwabuisi Dep. at 100.)  Moreover, Defendants insist that even if Plaintiff did perform patient visits for which she was not paid, she "has presented no evidence that Resource knew or should have known about the overtime she purposefully failed to report or document."  (Defs.' MSJ ¶ 33.)

        For the reasons already given, whether Plaintiff complained about not being paid overtime is irrelevant to Defendants' liability if they knew or should

have known about the hours she was working, and Defendants have proffered no competent summary judgment evidence to support their claim that they were unaware of the overtime hours Plaintiff worked.  Remarkably, Defendants did not even submit sworn testimony denying that Plaintiff worked on evenings and weekends coordinating patient visits, attending marketing events, and receiving phone calls.  Instead, in response to Plaintiff's sworn testimony, Defendants proffer only blanket denials as to overtime hours worked (see, e.g., Defs.' MSJ ¶ 33; doc. # 36 ¶¶ 7–8), and Ms. Nwabuisi, in her deposition, conceded that Plaintiff did regularly accompany her and Mr. Nwabuisi to lunch and dinner meetings.  (Nwabuisi Dep. at 48–51; 76–77.)  Accordingly, the Court denies Defendants summary judgment on Plaintiff's overtime claim and instead grants Plaintiff summary judgment on the following issues: (1) that Defendants knew or should have known that Plaintiff, at least on occasion, worked more than 40 hours per week; and (2) that under the FLSA Plaintiff was entitled to overtime compensation for those hours.

C.  FLSA Retaliation Claim

Plaintiff amended her Complaint in order to add a claim for retaliation, alleging that "Defendants intentionally retaliated against Plaintiff because she engaged in activity protected by the FLSA . . . ."  (FAC ¶ 6.2)  The Complaint was devoid of any factual allegations and merely recited the elements of

19

a retaliation claim.  (See FAC ¶¶ 6.1–6.5.)  In her Response to Defendants'

Motion, however, Plaintiff explained that "[s]hortly after applying [to Maxim

Staffing Solutions], Plaintiff's former colleague, Henry Coulston, called Plaintiff

and told her Defendants were blackballing her."  (Doc. # 35.)  This is the only

evidence Plaintiff has provided in support of this claim.

Plaintiff's evidence is insufficient to withstand a motion for summary

judgment for multiple reasons.  First, it is well settled that "the admissibility of

summary judgment evidence is subject to the same rules of admissibility applicable

to a trial."  Pegram v. Honeywell, Inc., 361 F.3d 272, 285 (5th Cir. 2004) (quoting

Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995)).  The

burden is on the proponent to show by a preponderance of the evidence that the

material is admissible as presented or to explain the admissible form that is

anticipated.  Fed. R. Civ. P. 56 advisory committee's notes.  As currently

presented, Plaintiff's only piece of evidence—Henry Coulston's alleged

statement—is inadmissible hearsay.  (See doc. # 35 at 17 ("Shortly after applying,

Plaintiff's former colleague, Henry Coulston, called Plaintiff and told her

Defendants were blackballing her.").)  Plaintiff does not explain what the basis of

Mr. Coulston's knowledge is or explain whether he would be able to testify that he

has personal knowledge that Defendants were blackballing Plaintiff.  Plaintiff's

counsel admitted at the hearing that Mr. Coulston's deposition had not been taken.

Accordingly, Plaintiff has not met her burden of showing by a preponderance of the evidence that Mr. Coulston's statement is admissible as presented or to explain the admissible form that is anticipated as required by Federal Rule of Civil Procedure 56.  See Fed. R. Civ. P. 56 advisory committee's notes.

Aside from Mr. Coulston's statement, which will not be considered for the reasons described, Plaintiff has provided no evidence in support of her retaliation claim.  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Houston, 337 F.3d at 541.  All Plaintiff has presented is speculation that the reason she has had trouble obtaining employment is because Defendants are "blackballing" her; this is not sufficient to defeat a motion for summary judgment.  Accordingly, the Court grants Defendants summary judgment on Plaintiff's retaliation claim.

D.  Claims Under the Texas Minimum Wage Act

Plaintiff's claims under the Texas Minimum Wage Act ("TMWA"), Tex. Lab. Code § 62.201, are based on the same facts she asserts in support of her minimum-wage claim under the FLSA.  However, The TMWA expressly provides that its provisions "do not apply to a person covered by the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.)."  Tex. Lab. Code § 62.151.  There is no dispute that Plaintiff is covered by the FLSA.  Accordingly, Plaintiff is not

covered by the TMWA, and the Court grants Defendants summary judgment on this claim.

    E.  Common-Law Claims

        Plaintiff's final cause of action is one for common-law breach of contract.  (FAC ¶¶ 8.1–8.7.)  The Amended Complaint merely recites the elements of a breach-of-contract claim and is devoid of any factual allegations that might explain what the basis of this claim is.  (See id.)  However, in her Response to Defendants' Motion for Summary Judgment, Plaintiff explains that "Defendants contracted with [her] and agreed to compensate [her] for all hours worked" and that they breached the contract by failing to correctly compensate her. (Doc. # 35 at 18.)

        Defendants move for summary judgment on the ground that "it would be [Plaintiff] who breached this contract first in time" by failing to submit accurate time cards and Patient Visit Records.  (Defs.' MSJ ¶ 38.)  However, the Court need not determine whether there exists a genuine issue of material fact regarding whether either party breached the contract between them, because—as Plaintiff's counsel conceded at the hearing—Plaintiff's state-law breach-of-contract claim is preempted by her FLSA claims.

        "Courts within this circuit and other circuits that have addressed the issue have concluded that state law claims are preempted by the FLSA to the

extent the plaintiff seeks damages for unpaid minimum wages or unpaid overtime compensation."  Coberly v. Christus Health, 829 F. Supp. 2d 521, 525 (N.D. Tex. 2011) aff'd sub nom. Coberly v. Health, 490 F. App'x 643 (5th Cir. 2012) (collecting cases).  Plaintiff's breach-of-contract claim is based on allegations that "Plaintiff was not fully compensated for all hours worked" (doc. # 35 at 18), and Plaintiff argues that this Court should not grant Defendants summary judgment on her breach-of-contract claim because "[t]here is a genuine dispute of material fact . . . regarding whether or not Plaintiff was compensated for all hours worked." (Id.)  This is merely a restatement of the claims Plaintiff brings under the FLSA. Because Plaintiff's breach-of-contract claim is preempted by the FLSA, the Court grants summary judgment in favor of Defendants on that claim.

II.    Plaintiff's Motion for Partial Summary Judgment

          Plaintiff's Motion for Partial Summary Judgment requests that the Court grant her summary judgment on the following issues:

1) Whether or not, as a matter of law, Plaintiff is entitled to overtime compensation and liquidated damages;
2) Whether or not, as a matter of law, Rose Nwabuisi is individually liable;
3) Whether or not, as a matter of law, Augustine Nwabuisi is individually liable; and
4) Whether or not, as a matter of law, Defendants' violation of the FLSA was willful, thereby entitling Plaintiff to claim damages for a three-year period.

(Pl.'s MPSJ at 2.)  Plaintiff explains that she "is not seeking summary judgment on Defendant's total liability" but merely on the four discrete issues listed.  (Pl.'s MPSJ at 16.)  For the reasons that follow, the Court grants Plaintiff's Motion.

A.  <u>As a Matter of Law, Plaintiff Is Entitled to Overtime Compensation and Liquidated Damages</u>

As Defendants' counsel reiterated at the hearing, there is no dispute that Plaintiff is an employee entitled to the protections of the FLSA.  (<u>See also</u> doc. # 36 ¶ 3(a).)  Moreover, for the reasons given above, there is no genuine dispute that Plaintiff, on at least some occasions, worked more than 40 hours per week; that Defendants knew or should have known about Plaintiff's overtime hours; and that Defendants nevertheless paid Plaintiff her standard hourly rate for all hours.  Accordingly, the Court grants Plaintiff's Motion insofar as it requests a declaration that Plaintiff is entitled to overtime compensation as a matter of law, with the total amount of liability to be determined at trial.

As for Plaintiff's request for summary judgment on the issue of liquidated damages, Section 216(b) of the FLSA provides that any employer who violates the FLSA "shall be liable to the employee . . . in the amount of [her] unpaid minimum wages, or [her] unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  However, "if [an] employer shows to the satisfaction of the court that the act or omission giving rise

24

to [the FLSA action] was in good faith and that he had reasonable grounds for

believing that his act or omission was not a violation of the [FLSA], the court may,

in its sound discretion, award no liquidated damages or award any amount thereof

not to exceed the amount specified in section [216(b) of the FLSA]." 29

U.S.C. § 260.  "An employer found liable under section 206 or section 207 has the

'substantial burden' of proving to the satisfaction of the trial court that its acts

giving rise to the suit are both in good faith and reasonable."  Mireles v. Frio

Foods, Inc., 899 F.2d 1407, 1415 (5th Cir. 1990).  As the Fifth Circuit has

explained:

> [T]he presumption of willfulness stands, absent positive and compelling
> proof of good faith. It is not enough, for instance, to plead and prove
> ignorance of the wage requirements. Knowledge will generally be imputed
> to the offending employer . . . .  Nor does the complete ignorance of the
> possible applicability of the [FLSA] shield the employer from liability for
> liquidated damages . . . . Good faith requires some duty to investigate
> potential liability under the [FLSA] . . . .  Lack of good faith is demonstrated
> when an employer knows, or has reason to know, that his conduct is
> governed by the [FLSA].

Reeves, 616 F.2d at 1353 (internal quotations marks and citations omitted). "Mere

ignorance of the provisions of the [FLSA] is an insufficient ground to defeat the

'reasonable grounds' exception authorized by § 260."  Cox v. Brookshire Grocery

Co., 919 F.2d 354, 357 (5th Cir. 1990).

Defendants have provided absolutely no evidence to support a finding

that their violation of the FLSA was in good faith or that they had reasonable

grounds for believing that they were not required to pay Plaintiff overtime compensation when she worked more than 40 hours per week.  Instead, Ms. Nwabuisi conceded in her deposition that Defendants did not consult an accountant, attorney, or any other professional with knowledge regarding FLSA compliance even after an employee filed suit against them under the FLSA. (Nwabuisi Dep. at 64–65.)  The outcome of the prior FLSA case is inapposite; rather, the lawsuit is relevant because it makes clear that Defendants knew or should have known that their conduct was governed by the FLSA.  As described above, "[l]ack of good faith is demonstrated when an employer knows, or has reason to know, that his conduct is governed by the [FLSA]."  Reeves, 616 F.2d at 1353 (internal quotation marks omitted).  Defendants have not met their "'substantial burden' of proving . . . that [their] acts giving rise to the suit are both in good faith and reasonable."  Mireles, 899 F.2d at 1415.  Accordingly, Plaintiff is entitled to liquidated damages in an amount to be determined at trial.

   B.  Rose and Augustine Nwabuisi Are Employers Who Are Jointly and
       Severally Liable for Plaintiff's Unpaid Wages to the Extent Resource Is

             Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such

labor organization."  29 U.S.C. § 203(d).  A "'[p]erson' means an individual,

partnership, association, corporation, business trust, legal representative, or any

organized group of persons."  Id. § 203(a).  Whether a person is an employer under

the FLSA is a question of law, although "subsidiary findings are of fact."  Beliz v.

W.H. McLeod & Sons Packing Co., 765 F.2d 1317, 1327 (5th Cir. 1985).  The

definition of "employer" under the FLSA is "expansive," extending liability to

persons with "managerial responsibilities" and "substantial control of the terms

and conditions of the [employee's] work."  Donovan v. Grim Hotel Co., 747 F.2d

966, 971 (5th Cir. 1984) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)).

> Analyzing whether a person is an "employer" under the FLSA "must

focus upon the totality of the circumstances, underscoring the economic realities of

the [employee's] employment."  Donovan v. Sabine Irrigation Co., 695 F.2d 190,

194 (5th Cir. 1983).  "The overwhelming weight of authority is that a corporate

officer with operational control of a corporation's covered enterprise is an

employer along with the corporation, jointly and severally liable under the FLSA

for unpaid wages."  Grim Hotel Co., 747 F.2d at 972 (quoting Donovan v. Agnew,

712 F.2d 1509, 1511 (1st Cir. 1983)); see Lee v. Coahoma County, Miss., 937 F.2d

220, 226 (5th Cir.1991) ("If an individual with managerial responsibilities is

deemed an employer under the FLSA, the individual may be jointly and severally

liable for damages resulting from the failure to comply with the FLSA."), modified

on other grounds, 37 F.3d 1068 (5th Cir. 1993).  A corporate officer need not have an ownership interest in the company to be liable under the FLSA.  See Reich v. Circle C. Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993)).  Instead, a court must determine whether the officer "effectively dominates [the company's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." Sabine Irrigation Co., 695 F.2d at 194–95.

Under this expansive definition, both Ms. and Mr. Nwabuisi qualify as "employers."  Ms. Nwabuisi is the sole owner of both Resource Health Services, Inc. and Resource Care Corporation.  (Doc. # 34-2 ¶¶ 4, 6; doc. # 33-6 at 15.)  She is also the Nurse Administrator in charge of all the nurses.  (Nwabuisi Decl. ¶ 1.)  Ms. Nwabuisi interviewed, hired, and fired Plaintiff; and she directly oversaw Plaintiff's work.  (Pl.'s MPSJ at 14; Nwabuisi Dep. at 30–31.)  Ms. Nwabuisi was also involved in creating Defendants' pay practices and had direct control over Defendants' compliance with the FLSA.  (Nwabuisi Dep. at 96, 110.)  Accordingly, it is clear that she "has the power to act, on behalf of the corporation vis-a-vis its employees." Circle C. Invs., Inc., 998 F.2d at 329.

Similarly, as described above, Mr. Nwabuisi is the CEO of both Resource Health Services, Inc., and Resource Care Corporation.  (Defs.' MSJ ¶ 1.)  Mr. Nwabuisi participated in the interviewing, hiring, and firing of Plaintiff; signed company checks; authorized deductions from payroll by deciding whom should

receive a loan or wage advance; and participated in the creation of Defendants'
system of compensation.  (Nwabuisi Dep. at 78–79.)   Because Mr. Nwabuisi was
"a corporate officer with operational control of [the] corporation's covered
enterprise," Grim Hotel Co., 747 F.2d at 972, he "is an employer along with the
corporation, jointly and severally liable under the FLSA for unpaid wages."  Id.
Accordingly, to the extent that Resource is found liable, both Ms. and Mr.
Nwabuisi are jointly and severally liable as employers under the FLSA.

   C.   Defendants Willfully Violated the FLSA, Entitling Plaintiff to a
        Three-Year Statute of Limitations

        Section 255(a) of the FLSA imposes a two-year statute of limitations
for violations of the FLSA.  29 U.S.C. § 255(a).  However, the statute of
limitations is extended to three years for a willful violation.  Id.  To show a willful
violation of the FLSA, the "plaintiff bears the burden of establishing that his
former employers 'either knew or showed reckless disregard for the matter whether
[their] conduct was prohibited by the statute.'"  McLaughlin v. Richland Shoe Co.,
486 U.S. 128, 133 (1988).

        Resource is a large, sophisticated company with over 500 employees.
(Nwabuisi Dep. at 24.)  It has been in business for over 15 years and has to comply
with complicated governmental codes, such as the Texas Health and Safety Code.
(Id. at 11.)  For the reasons given above, Defendants were on notice that their

actions were governed by and potentially violated the FLSA, and yet they failed to take steps—such as securing legal advice from a competent professional—to ensure Resource's compliance with the Act.  See Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994) ("Continuing the payment practices without further investigation into the alleged violation could constitute 'reckless disregard' of the FLSA."); cf. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 130 (1985) (finding no willfulness where the employer "sought legal advice and consulted with the Union" and where the parties, "in focusing on the larger overall problem, simply overlooked the challenged aspect of the plan"); Halferty v. Pulse Drug Co., Inc., 826 F.2d 2, 3–4 (5th Cir. 1987) (finding no willfulness where employer "consulted with its attorney, and examined the DOL bulletin discussing 29 C.F.R. § 785.23").  Furthermore, Defendants emphasized over and over again in official Resource publications that the company did not pay overtime, indicating that they were aware of overtime requirements generally and were seeking to avoid them. Accordingly, the Court concludes that Defendants either knew or acted with reckless disregard as to whether their policies were in violation of the FLSA, entitling Plaintiff to a three-year statute of limitations.

CONCLUSION

For the reasons given, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (doc. # 33) and **GRANTS** Plaintiff's Motion for Partial Summary Judgment (doc. # 34).

**IT IS SO ORDERED**.

**DATED**:  San Antonio, Texas, May 10, 2013.

_____
David Alan Ezra
Senior United States District Judge

31