IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANA D. MOHAMMADI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| AUGUSTINE NWABUISI, | § | CIVIL ACTION NO. SA-12-CA-0042 DAE |
| ROSE NWABUISI, | § | |
| RESOURCE HEALTH SERVICES, INC. | § | |
| d/b/a RESOURCE HOME HEALTH | § | |
| SERVICES, INC., and RESOURCE | § | |
| CARE CORPORATION | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE DAVID A. EZRA:

### I.      Procedural Background

1.   Plaintiff's claim is for unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. §201 *et. seq.*

2.   On May 10, 2013, this Court entered an Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; (2) Granting Plaintiff's Motion for Partial Summary Judgment (Order). (Doc. #46). The Order sets forth the relevant background facts, which are incorporated herein but not repeated here at length, and held the following:

   a.   There was a fact dispute "regarding whether or not Defendants were authorized to deduct $1,322.00 from Plaintiff's paycheck—and, accordingly, whether or not Defendants paid Plaintiff the minimum wage for this pay period." (*Id.* at 8.)

   b.   "Plaintiff has shown that there is no genuine dispute that, on at least some occasions, she did work more than 40 hours per week," for which she is entitled to overtime compensation.  (*Id.* at 9, 14, 19.)

c. Plaintiff is entitled to liquidated damages; (*Id*. at 26)

d. Rose Nwabuisi and Augustine Nwabuisi are Plaintiff's employers and are liable for the Plaintiff's unpaid wages to the same extent as the corporate Defendants. (*Id*. at 29)

e. Defendants willfully violated the Fair Labor Standards Act entitling Plaintiff to a three-year statute of limitations. (*Id*. at 30)

## II.     Findings of fact and conclusions of law

### A.  Plaintiff's Uncompensated Work

1. The Defendants employed Plaintiff as a PHC Field Supervisor for Providers and as an LVN Case Manager.  Plaintiff was responsible for ensuring quality and safe delivery of primary home care services, coordinating the provision of primary care services, and ensuring efficient and effective case management.

2. Defendants' practice was for their employees to punch in and out with a time clock when they arrived and when they left the Defendants' office on Callahan Road in San Antonio, Texas.

3. Defendants' payroll process automatically deducts a half hour for lunch, regardless of whether or not the employee took a lunch break or continued to work through lunch.  Defendants system did not provide a way for employees, including the Plaintiff, to note if they had worked through their automatically deducted half hour lunch break.  Therefore, one half hour was deducted from Plaintiff's compensation for each day worked, regardless of whether or not she worked through lunch.

4. The time that the Plaintiff worked each week in the Defendants' office is recorded in the time cards admitted as Trial Exhibit P1 and averages 44.38 per week.

5. However, the Plaintiff's pay stubs demonstrate that she was only paid for 40 hours of labor, regardless of how many hours were recorded on the Plaintiff's time cards. (Trial Exhibit P1)

6. The Defendants' refusal to compensate the Plaintiff for all hours reflected in her time cards demonstrated the futility of attempting to record other "off the clock" work.

7.  The Plaintiff also worked additional time "off the clock," primarily outside the office.

8.  Plaintiff's off-the-clock job responsibilities included:

    a.  Marketing and outreach activities at Defendants' request. These activities consisted of: going to home-health care related events before, during, and after regular business hours, visiting hospitals, corresponding with case managers at health care providers' offices, attending lunch and dinner meetings with Defendants and Medicare providers, and visiting with potential clients.

    b.  Carrying a personal and later an office cell phone and remaining on call while not in the office (before and after business hours and on the weekends) to coordinate replacements when Defendants' other employees missed scheduled provider visit appointments.

    c.  If a provider could not attend his or her shift, the Plaintiff attempted to find another provider to cover the shift.  However, if Plaintiff could not find another employee to cover the shift, Plaintiff performed the provider visit.  These visits did not require a Patient Visit Record.[1]

    d.  Defendants frequently called Plaintiff after working hours to request assistance with coordinating their out-of-town travel and to discuss nursing and other business-related matters.

**B.  Defendants' Knowledge of Uncompensated Work**

1.   Under the "suffer or permit to work" rule, an employer must compensate its employees for work that is not expressly authorized if such work is performed with the knowledge and acquiescence of management.  29 U.S.C. § 203(g); 29 CFR § 785.11-12.

---

[1] The Plaintiff performed multiple provider visits without compensation.  However, when Plaintiff performed a Skilled Nursing Visit the Plaintiff submitted a "Patient Visit Record or "LVN Nursing Note" and was compensated $30.00 or $35.00 regardless of the duration of the visit.  The Patient Visit Record/LVN Nursing Note is a document that is required to be submitted by law for the purposes of tracking patient care, but is not a time-tracking mechanism.

*Plaintiff's Proposed Findings of Fact and Conclusions of Law*                    Page **3** of **13**

2.    "The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued outside the scheduled work time, an integral and indispensable part of the employee's principal activities." Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008) (citations omitted).   "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." Id.   Therefore, the key factual inquiry is whether the employer knew or through use of reasonable diligence should have known that a person was performing work on the employer's behalf.   Donovan v. American Airlines, 686 F.2d 267, 271-72 (5th Cir. 1982); Johnson v. RGIS Inventory Specialists, 554 F. Supp. 2d 693, 709 (E.D. Tex. 2007).

3.    Courts have considered a variety of factors in assessing whether employers have knowledge of uncompensated or compensated time, including that: (1) the employer was in a position to see the employees work; (2) there was too much work performed for the regular working hours allotted; and (3) there were repeated and numerous occasions of extra work being performed.   Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 515 (5th Cir. 1969); Martin v. Deiriggi, 30 WH Cases 1129, 1138 (N.D. W.VA 1991), aff'd, 1 WH Cases 2d 250 (4th Cir. 1992); Reich v. Department of Conservation & Natural Res., 28 F.3d 1076, 1081 (11th Cir. 1994).

4.    Furthermore, an employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. 29 C.F.R. §785.12-13 ([I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed; Maynor v. Dow Chemical Co., 671 F.Supp.2d 902, 928 (S.D.Tex. 2009) citing Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995) quoting Forrester V. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981).

5.  Knowledge of uncompensated time is imputed to the employer if the employer's own documents show time worked.  Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2nd Cir. 2008). The Court previously noted that the "Plaintiff submitted a sampling of time sheets and payroll checks that indicate that she worked more than 40 hours during various weeks and yet was paid at her normal rate for those extra hours."  (Doc. #46 at 14).

6.  With regard to Plaintiff's "off-the-clock" overtime hours, this Court previously noted that:

> Remarkably, Defendants did not even submit sworn testimony denying that Plaintiff worked on evenings and weekends coordinating patient visits, attending marketing events, and receiving phone calls. Instead, in response to Plaintiff's sworn testimony, Defendants proffer only blanket denials as to overtime hours worked (see, e.g., Defs.' MSJ ¶ 33; doc. # 36 ¶¶ 7–8), and Ms. Nwabuisi, in her deposition, conceded that Plaintiff did regularly accompany her and Mr. Nwabuisi to lunch and dinner meetings. (Nwabuisi Dep. at 48–51; 76–77.)

(*Id*. at 19.)

7.  Defendants required Plaintiff to carry an office cell phone which would necessitate her attention at various times before, during, and after regular business hours.

8.  Due to the nature of Defendants' business, one of Defendants' employees would have to remain on call during the morning, evening, and weekends to respond to these calls.

9.  Defendants directed Plaintiff to coordinate provider visits using her personal cell phone and later an office cell phone and knew that she would make and receive calls to coordinate visits during evenings and weekends when Plaintiff was not being compensated.

10. Defendants frequently called Plaintiff before after working hours to request assistance with coordinating their out-of-town travel and to discuss nursing and other buisness-related matters.

11. Defendants have owned their business for over fifteen years, and thus were well aware of the time commitment carrying this phone would place on Plaintiff when they assigned her this task.

12. Regardless of the Defendants' awareness (both actual and imputed) of the Plaintiff's substantial overtime work, it is the duty of the Defendants to exercise control and see that work is not performed if management does not want the work to be performed. 29 C.F.R. § 785.13.

13. The mere promulgation of a rule against work is not sufficient. *Id*. Management has the power to enforce the rule and must make every effort to do so. *Id*.

14. Promulgating rules requiring employees to report all hours worked will not shield an employer from liability if the employer refuses to accept employees' reports of overtime work being performed. Pabst v. Oklahoma Gas & Elec. Co., 228 F.3d 1128, 1133 (10th Cir. 2000) (employer who established on call system for which it did not pay employees, cannot claim it did not know employees kept on call hours); Skelton v. American Intercont'l Univ. Online, 382 F. Supp. 2d 1068 (N.D. Ill. 2005); Von Friewalde v. Boeing Aerospace Operations, Inc., 339 F. App'x 448, 459, 460 (5th Cir. 2009) (holding that an employer's "policy against unauthorized overtime offer[ed] no defense where "his managers were clearly aware that [the employee] was working overtime").

15. Time spent on an activity that is primarily for the benefit of the employer is compensable work time. 29 CFR §785.7, 785.28; Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005). The time Plaintiff spent on lunch and after-hours marketing activities to generate additional business and promote relations between Defendants and Medicaid case managers and case coordinators was primarily for the benefit of the Defendants.

16. Finally, Plaintiff submitted calendars on several occasions detailing the marketing activities she performed on the weekend and after her regularly scheduled 8:30 AM – 5:00 PM shift.

17. Plaintiff also regularly spoke with Defendant Rose Nwabuisi asking her when she would be paid for her overtime hours alerting the Defendants that she was working overtime hours and not being compensated for them.

18. Therefore, the Court finds that Defendants had actual and constructive knowledge that Plaintiff was performing off-the-clock labor, that Defendants required Plaintiff to perform this labor, and that the Defendants suffered or permitted this work.

## C.  Time Records and Burden-Shifting Framework

19. The parties' respective burdens of proof with regard to establishing Plaintiff's overtime hours worked are set forth in the seminal FLSA case of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  In *Mt. Clemens Pottery Co.*, the employer had not accurately recorded the hours worked by its employees.  *Id.* at 684.  The U.S. Supreme Court began its analysis of how many hours the employees worked by noting that it is the employer's obligation under the FLSA to maintain accurate records of its employees' hours.  *Id.* at 686; 29 U.S.C. §211(c).

20. The Court reiterated the policy of the FLSA to place the burden to record hours on the employer to further the remedial purposes of the Act, recognizing that "[e]mployees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy."  *Id.* at 687.

21. Defendants' insistence that it was Plaintiff's burden to ensure she did not work overtime hours does not insulate the Defendants from liability.  "While there is nothing to prevent an employer from delegating to his employees the duty of keeping a record of their hours, the employer does so at his peril.  He cannot escape the record keeping provisions of the Act by delegating that duty to his employees."  *See Goldberg v. Cockrell*, 303 F.2d 811, 814 n. 1 (5th Cir. 1962); *See also Castillo v. Givens*, 704 F.2d 181, 194. (5th Cir. 1983) (*overruled on other grounds*) (29 U.S.C. §211(c) places on the employer the obligation of keeping accurate records of the hours worked by his employees; the employer cannot transfer his statutory duty to his employees.); *James v. McKenzie Tank Lines, Inc.*, CIV.A. 96-1605, 1997 WL 599310 at *1 (E.D. La. Sept. 25, 1997).

22. The Court stated that, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises.  The solution, however,

is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." 328 U.S. at 687.

23. When an employer fails to keep complete and accurate records of an employee's hours, the Court established the following burden shifting analysis:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. **The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.**

*Id.* at 687-88 (emphasis added).

24. Under the *Mt. Clemens Pottery* standard, a plaintiff does not have to "prove each hour of overtime work with unerring accuracy or certainty." Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988). A Plaintiff under the FLSA is only required to show "the amount and extent of improperly compensated work as 'a matter of just and reasonable inference.'" *Id.*; 328 U.S. 687.

25. **"[W]hen assessing damages under the *Anderson* standard, a court may draw inferences from oral testimony, sworn declarations, and whatever relevant documentary evidence a plaintiff is able to provide."** Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 13 (D.D.C. 2010) (emphasis added).

26. Under the *Mt. Clemens Pottery* framework, "[w]here the inaccuracy is due to the employer's failure to keep adequate records as required by statute, **imprecise evidence on quantum provides a "sufficient basis" for damages.** Reeves v. International Tel. and Tel. Corp., 616 F.2d 1342, 1351 (5th Cir. 1980). Under these circumstances, [the Fifth Circuit has] "in effect **ordered the fact finder to do the best he could in assessing damages."** Id. In *Reeves*, the Fifth Circuit upheld the District Court's award of unpaid wages based on the plaintiff's testimony of his estimate of average hours per week

based on a "running total of hours" that he conceded "**corresponded to the rough computations of his subconscious mind."** Id. at 1352.  The court held the award "reflected a conscientious adherence to the rule enunciated in *Anderson v. Mt. Clemens*." Id.

27. The *Mt. Clemens Pottery* burden-shift framework applies in this case because Defendants records are incomplete and inaccurate.

28. First, Defendants concede that they wholly failed to record any of the time the Plaintiff worked "off the clock" before or after her scheduled shift.

29. Second, Defendants prohibited the Plaintiff from recording her work time before and after her office hours, on the weekends, away from the office, and at patients' homes on Plaintiff's time cards.

30. Third, the Plaintiff's pay stubs demonstrate that she was only paid for 40 hours of labor, regardless of how many hours were recorded on the Plaintiff's time cards. (Plaintiff's Trial Exhibit 1)

31. Fourth, Defendants' also concede that their payroll process automatically deducts a half hour for lunch, regardless of whether or not the employee took a lunch break or continued to work through lunch.  Defendants' time card system does not provide a method for Defendants' employees to note when they did or did not take a lunch break.  Therefore, a deduction for one half hour was made, regardless of whether or not the employee worked through lunch.Fifth, Defendants time recording device was frequently malfunctioning.

32. Finally, many of Defendants' time records are illegible and others do not indicate the date, month, or year to which they apply as the FLSA requires. 29 C.F.R. §516.2(a)(5-12).

33. Because the Defendants have failed to maintain accurate records of the Plaintiff's hours, the Plaintiff is entitled to the burden-shifting framework established by the Supreme Court in *Mt. Clemens Pottery*.

34. The Plaintiff has met her burden under *Mt. Clemens Pottery* by providing reasonable and credible evidence regarding her estimate of the number of hours she worked each week "off the clock."

35. Defendants' have failed to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the Plaintiff's evidence." Mt. Clemens Pottery, 328 U.S. at 678-88

36. Therefore, the Court awards damages based on the Plaintiff's reasonable and credible testimony of her hours worked, which is accurately summarized, week by week, in Trial Exhibit P2.

### D.  Regular rates of pay

37. The Fair Labor Standards Act dictates that overtime must be compensated at one and one-half times the regular hourly rate at which the employee is actually employed.  29 C.F.R. §778.107, 778.109. In weeks when the employee is compensated solely on the basis of a single hourly rate, that is the regular rate for purposes of computing overtime. 29 C.F.R. §778.110(a).

38. In weeks when the Plaintiff did not perform any skilled LVN visits, Defendants paid Plaintiff solely on the basis of her base hourly rate.  Therefore, for those weeks, the Plaintiff's base hourly rate is also her regular rate for purposes of computing overtime.

      a.  From June 16, 2009 through July 15, 2009, the Plaintiff's hourly rate was $15.00; her overtime rate for this time period is $22.50.

      b.  From July 16, 2009 through July 15, 2010, the Plaintiff's hourly rate was $17.31; her overtime rate for this time period is $25.97.

      c.  From August 1, 2010 through November 22, 2010, the Plaintiff's hourly rate was $23.00; her overtime rate for this time period is $34.50.

      d.  In October 2011, the Plaintiff's hourly rate was $25.00; her overtime rate for this time period is $37.50.

39. However, in weeks when the Plaintiff performed skilled LVN visits, the Defendants paid her an additional lump sum of $30.00 or $35.00 per visit, regardless of the duration of the visit.  During those weeks, the Plaintiff's regular rate is computed by dividing her total compensation owed by total hours

  
worked during the workweek. 29 CFR §778.110.  The Plaintiff's total compensation owed includes the Plaintiff's hourly rate owed and any payments for LVN/Skilled Nursing Visits.

### E.  Minimum Wage for Final Paycheck

40. The Fair Labor Standards Act requires employers to pay employees a minimum of $7.25 per hour for every hour worked. 29 U.S.C. §206.

41. Plaintiff borrowed $3,500.00 on March 4, 2010.  On October 26, 2010, Plaintiff borrowed $1,700.00.  The total amount Plaintiff borrowed was $5,200.00.

42. Defendants deducted $2,980.00 in loan re-payments from Plaintiff's paychecks.

43. On October 25, 2010, Plaintiff applied for and was approved for two weeks of paid vacation for the days of November 1, 2010 – November 14, 2010. When Plaintiff returned from vacation she discovered the locks had been changed and she had been terminated from her employment with the Defendants.  Defendants never paid Plaintiff for her approved two weeks of paid vacation.  The pay for the two weeks would have been $1,840.00.[2]

44. Including Plaintiff's uncompensated vacation, Plaintiff paid back a total of $4,820.00 leaving a balance of $380.00.

45. In October of 2011, Plaintiff returned to work with the Defendants.

46. It was not a condition of her re-hire that she re-pay the remaining balance of $380.00 on her loan.

47. According to Defendants' time record for the month of October 2011, Plaintiff worked a minimum of sixty (60) hours from October 1, 2011 – October 15, 2011.  Plaintiff received a paycheck for $.90 to compensate those hours.

---

[2] 80 hours x $23.00 per hour = $1,840.00

48. Defendants paid Plaintiff $00.90 for the October 1, 2011 – October 15, 2011 pay period. Therefore, they failed to pay Plaintiff $7.25 for every hour worked during this pay period.  Plaintiff is entitled to minimum wage for this pay period.

### III.     Conclusion

49. Trial Exhibit P2 sets forth the amounts of unpaid overtime and minimum wages Plaintiff is due for each week of the relevant period, which total $_____.

50. Additionally, Plaintiff is entitled to liquidated damages in the same amount, for a total judgment of $_____. (See Doc. # 46 at 24-26.)

Respectfully Submitted,

*/s/ Claire Rodriguez*
Claire Rodriguez
Texas Bar #: 24071420
Equal Justice Center
6609 Blanco Rd., Suite 260
San Antonio, TX  78216
Tel. (210) 308-6222, ext. 105
Fax (210) 308-6223
claire@equaljusticenter.org

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I, Claire Rodriguez, hereby certify that on this 20th day of August, 2013, a true and correct copy of the foregoing document was served on each party by my submission of the document to the U.S. District Court through the Court's ECF system:


Glenn J. Deadman
Law Offices of Glenn J. Deadman, P.C.
509 South Main Avenue
San Antonio, Texas 78204
Fax: (210) 472-3901
gjdeadman@aol.com


*/s/ Claire Rodriguez*
Claire Rodriguez