IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DANA D. MOHAMMADI, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | |
| § | |
| AUGUSTINE NWABUISI, § | CIVIL ACTION NO. SA-12-CA-0042 RP |
| ROSE NWABUISI, § | |
| RESOURCE HEALTH SERVICES, INC. § | |
| d/b/a RESOURCE HOME HEALTH § | |
| SERVICES, INC., and RESOURCE § | |
| CARE CORPORATION § | |
| § | |
| *Defendants*. § | |

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE ROBERT L. PITTMAN:

### I.     Procedural Background

1. Plaintiff's claim is for unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. §201 *et. seq.*

2. On May 10, 2013, the Court entered an Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; and (2) Granting Plaintiff's Motion for Partial Summary Judgment.  (Doc. # 46.) This Order set forth the relevant background facts, which are incorporated herein but not repeated at length, and held the following:

    a. "Plaintiff has shown that there is no genuine dispute that, on at least some occasions, she did work more than 40 hours per week," for which she is entitled to overtime compensation. (*Id*. at p. 9, 14, 19.)

    b. Plaintiff is entitled to liquidated damages. (*Id*. at p. 26.)

    c. Rose Nwabuisi and Augustine Nwabuisi are Plaintiff's employers and are liable for the Plaintiff's unpaid wages to the same extent as the corporate Defendants. (*Id*. at p. 29.)

  d. Defendants willfully violated the FLSA entitling Plaintiff to a three-year statute of limitations. (*Id*. at p. 30.)

3. After a three day bench trial in September of 2013, on January 2, 2014, the Court entered its Findings of Fact and Conclusions of Law. (Doc. # 81.) This Order, incorporated herein, set forth the relevant background facts and held the following:

  a. The Plaintiff often did uncompensated work before and after her scheduled shift, during her lunch break, and on weekends. (*Id*. at p. 5.)

  b. That judgment be entered in favor of Plaintiff and against Defendants in the amount of (1) $38,100.49 in unpaid wages; (2) $38,100.49 in liquidated damages; and (3) reasonable attorney's fees and costs. (*Id*. at p. 58.)

4. Defendants appealed the Court's Summary Judgment Order and Findings of Fact and Conclusion of Law and on March 25, 2015, the Fifth Circuit Court of Appeals entered an order (Doc. 105), incorporated herein, holding the following-

  a. For FLSA liability and the liquidated damages issues, the district court's summary judgement order is affirmed essentially for the reasons stated by the district court in its detailed and well-reasoned opinion. (Doc 105 at p.4.)

  b. The district court did not retry the issue of willfulness, but instead referred only to its conclusion in the summary judgment order that the limitations period was three years. (*Id*.) However, the evidence relied on in the summary judgment order was insufficient to establish willfulness and, therefore, the issue must be resolved by trial. (*Id*.)

## II. Proposed Findings of Fact and Conclusions of Law

*Willfulness*

1. The Plaintiff bears the burden of proving that an employer's violation of the FLSA was willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *See also Cox v. Brookshire Grocery*

*Co.*, 919 F.2d 354, 356 (5th Cir. 1990). A violation of the FLSA is willful if the defendant either knew his or her conduct violated the FLSA or showed reckless disregard for whether his or her actions complied with the Act. *McLaughlin* at 133. Negligence alone does not establish a willful violation. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990) (citing *McLaughlin*).

2. Courts have found that where an employer has notice that their employees were working overtime, and they failed to compensate them for this time, there is sufficient evidence to support a finding of willful conduct in violation of the FLSA. *See Escobedo v. Dynasty Insulation, Inc.*, 694 F.Supp.2d 638, 651, (W.D. Texas- El Paso Division, March 3, 2010) (citing *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009)). *See also Ramos v. Al-Bataineh*, 599 Fed.Appx. 548, 551 (5th Cir. 2015) (finding violation to be willful where employer neither acknowledged employee's presence for extended overtime hours nor kept records of employee's overtime work); *Monsivais v. C & D Groceries*, 2014 WL 2696628, (S.D. Tex June 13, 2014) (finding willfulness where pay statements would reflect, at most, forty hours of work per week, regardless of whether employees worked overtime); *Karna v. BP Corp. N. Am., Inc.,* No. H–12–0101, 2013 WL 1155485, at *19 (S.D.Tex. Mar.19, 2013) (unpublished) (finding evidence that the defendant did not allow employees to enter more than fifty hours a week supported a finding that the defendant's violation was willful); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 301 (N.D.N.Y.1978) ("The defendants' practice of knowingly maintaining inaccurate time records which greatly understated the number of hours worked by their sales personnel permits only one conclusion; i. e. the violations of the Act were willful.").

3. An employer's failure to keep records required by the Act may constitute evidence that the employer's failure to pay overtime compensation was willful. *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832 (6th Cir. 2002) (noting that it would have been proper for the

court to have instructed the jury that it could consider the employer's recordkeeping behavior in determining whether or not its failure to pay overtime was willful); *Jacobsen v. Stop & Shop Supermarket Co.*, 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003) ("[F]ailure to keep records required by the Department of Labor regulations for non-exempt employees…may permit a finding of willfulness."). In other words, an employer's recordkeeping practices may corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime wages. *See Perez v. T.A.S.T.E. Food Products, Inc.* 2014 WL 412327 (W.D. Tex. Feb. 3, 2014).

4. Courts in this Circuit and others have found an employer's continuation of a pay practice after being put on notice the practice violated the FLSA to be a willful violation of the FLSA. *See Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir.1994) (noting that local Wage and Hour office director informed employer its overtime practices violated the FLSA). Moreover, evidence an employer previously litigated "a closely related overtime issue" has been held sufficient to find willfulness. *Clark v. Centene Co. of Texas, L.P.*, A-12-CA-174-SS, 2015 WL 2250387, at *9 (W.D. Tex. May 11, 2015) (citing *Sealey v. EmCare, Inc.,* No. 2:11–CV–00120, 2013 WL 164040, at *4 (S.D.Tex. Jan. 14, 2013)). *See also Meesook v. Grey Canyon Family Medicine, P.A.*, 2014 Wage & Hour Cas.2d (BNA) 157, 965, Civil Action No. SA–13–CV–729–XR (W.D. Tex. May 28, 2014) ("[A} violation may be willful if the employer had previously been put on notice that its practices violated the statute.").

*Defendants' Violation of the FLSA was Willful*

5. The Court refers to and incorporates in their entirety the detailed Findings of Fact and Conclusions of Law made after the first trial in this matter, (Doc. # 81.) and the factual findings made in its May 10, 2013 order on the Plaintiff and the Defendants' cross-motions for summary judgment. (Doc. # 46.)

*Resource knew Plaintiff was working substantial uncompensated overtime*

6. Resource is a sophisticated enterprise that employs over five hundred employees, and its annual revenues exceed $5 million. Resource has contracts with state and federal agencies, including the Texas Department of Aging and Disability Services. (Doc. # 81 at p. 3).

7. Resource knew that it was required to compensate Plaintiff for all the hours she worked, including for all the hours she reported on her time cards. Resource also was aware of the duty to compensate Plaintiff for overtime hours worked at an overtime rate as required by the FLSA.

8. The Defendants understood the concept of overtime, and paying time-and-half for hours worked over forty in a workweek.

9. The Plaintiff's paystubs show, and the Defendants do not deny, that Plaintiff was never paid at an overtime rate. (Doc. # 81 at p. 27.)

10. With a few rare exceptions, Plaintiff was paid for no more than forty (40) hours each week, regardless of the amount of time captured by her timecards. (*Id.*) Defendants' own records indicate that Plaintiff worked substantial overtime. (Doc. # 81 at p. 41.)

11. As discussed at length in the initial findings, Defendants knew that Plaintiff worked on average, fifty-eight (58) hours per week, but Defendants refused to pay for most of Plaintiff's overtime hours. (Doc. # 81 at p. 50.) Defendants failed to pay for overtime hours worked both in the office and outside of the office.

12. The Plaintiff asked Defendant Rose Nwabuisi that she be compensated for the unpaid time that she was working, and Rose Nwabuisi indicated that Plaintiff would be paid in the future. (Doc. # 81 at p. 15-6.) However, Plaintiff was never paid for this time.

13. Despite complaints to Resource about not being properly compensated, Resource continued to not properly pay overtime to Plaintiff. Resource was aware of unpaid overtime as Plaintiff faxed to Defendants calendars listing the marketing activities she performed, copies of receipts for

marketing related expenses, and requests for mileage reimbursements for out-of-office work. (Doc. # 81 at p. 5.)

14. Defendant Rose Nwabuisi knew Plaintiff was completing such tasks outside of the hours she was being paid for based on documentation Plaintiff submitted to Defendants, and because Rose Nwabuisi accompanied Plaintiff to do outside of standard-hours work. Defendant Rose Nwabuisi was aware and approved of the Plaintiff attending marketing meals with caseworkers. (Doc. #81 at p. 6.) Defendant Rose Nwabuisi sometimes accompanied Plaintiff on lunch or dinner meetings to do marketing work (*Id*.) Defendant Rose Nwabusi had actual knowledge that Plaintiff used her uncompensated lunch time to meet with caseworkers and advertise Resource's services. (Doc. #81 at p. 42.) In addition, Plaintiff submitted documents to Defendants indicating she was working outside of standard hours performing marketing work. (Doc. # 81 at p. 5-10.)

15. Despite knowing this work was being performed during overtime hours, Defendants did not properly compensate Plaintiff for this work. (Doc. #81 at p. 23-4.) In addition to failing to compensate overtime to Plaintiff for marketing work, Defendants also failed to compensate Plaintiff for time spent making phone calls, sending emails, and filling in for providers outside of standard office-hours. (Doc. #81 at p. 10-12.) Plaintiff sometimes sent Defendant Rose Nwabuisi work related emails late in the evening. (Doc. #81 at p. 10-11.) Moreover, Defendants frequently called Plaintiff outside of standard office hours.

16. As described above, Defendants' knowledge that Plaintiff was working substantial uncompensated overtime hours demonstrates that they knew they were violating the FLSA or that they acted with reckless disregard as to their duty to comply with the FLSA.

*Defendants' failure to keep adequate time records is evidence that their violation of the FLSA was willful*

17. As discussed at length in this Court's initial findings, Defendants knew that they were not keeping records of many of Plaintiff's work hours. (Doc. #81 at p. 23-27.) About half of the time cards

Defendants produced during discovery did not list the day, month, or year to which they apply. (Doc. #81 at p. 24.) Furthermore, Defendants submitted the exact same time card for two different weeks and produced inauthentic time cards for several weeks (Doc. #81 at p. 24-27.)

18. The time cards produced by Defendants do not capture lunch meetings Plaintiff attended, the time Plaintiff worked on the weekends performing provider visits, nor the time Plaintiff spent on the weekends performing marketing work. (Doc. #81 at p. 26-7.)

19. Moreover, the records that Defendants offered at trial were incomplete, inaccurate, and unauthentic. Many of the time records produced were illegible. (Doc. #81 at p. 24.)

20. The Defendants assigned work tasks to the Plaintiff that they knew the Plaintiff must have completed during overtime hours. Defendants also had no means by which Plaintiff could record and be paid for these hours. Defendants knew the Plaintiff was working overtime outside of the normal office work day, and thus knew they were in violation of the FLSA. These outside of standard-hours tasks included, but were not limited to, performing marketing activities, making phone calls and sending emails, working through lunch, and filling in for providers who could not attend appointments. (Doc. #81 at p. 42-3.)

21. Defendants' official, written policy was that Resource would not pay employees overtime unless the employee obtained written approval in advance. (Doc. # 81 at p. 22.)

22. Given Defendants' policy to only pay for office work during standard hours, when Plaintiff clocked out at 5:00 pm, the Plaintiff's clock-outs did not necessarily indicate the time at which she stopped working. (Doc. # 81 at p. 16).

23. Defendants' failure to keep adequate records demonstrates that they knew they were violating the FLSA or that they acted with reckless disregard as to their duty to comply with the FLSA.

*Defendants continued their practices after being put on notice that they were in violation of the FLSA*

24. The Defendants had previously been sued in federal court by a former employee of the Defendants who alleged that Resource had violated her rights under the FLSA by failing to pay overtime, including not paying for time coordinating provider visits and making work related calls from a company cellphone. The Defendants settled this case with the former employee.

25. Because Resource had previously been sued for violating the FLSA under similar circumstances, Resource was on notice that their policies were in violation of the FLSA, evidencing that Resource's non-payment of overtime to Plaintiff was willful.

### III.   Conclusion

1. Based on the foregoing proposed findings of fact and conclusions of law, Plaintiff requests that the Court find the Defendants' violations of the FLSA to be willful and to enter judgement in favor of Plaintiff and against Defendants in the amount of (1) $38,100.49 in unpaid wages; (2) $38,100.49 in liquidated damages, (3) and such other relief as is just and equitable.

Respectfully Submitted,

*/s/ Philip J. Moss*
Philip J. Moss
Texas Bar #: 24074764
Equal Justice Center
8301 Broadway St., Ste. 309
San Antonio, TX  78209
Tel. (210) 308-6222, ext. 102
Fax (210) 308-6223
pmoss@equaljusticecenter.org

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

      I, Philip J. Moss, hereby certify that on this 17th day of November, 2015, a true and correct copy of the foregoing document was served on each party by my submission of the document to the U.S. District Court through the Court's ECF system:

Glenn J. Deadman
Law Offices of Glenn J. Deadman, P.C.
509 South Main Avenue
San Antonio, Texas 78204
Fax: (210) 472-3901
gjdeadman@aol.com

                                  */s/ Philip J. Moss*
                                  Philip J. Moss