IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DANA D. MOHAMMADI § § *Plaintiff* § § § § AUGUSTINE NWABUISI, § ROSE NWABUISI, § RESOURCE HEALTH SERVICES, INC. § d/b/a RESOURCE HOME HEALTH § SERVICES, INC., and RESOURCE § CARE CORPORATION § § *Defendant* § | CIVIL CASE NO. SA-12-CA-00042 RP |

## DEFENDANTS' CLOSING ARGUMENT

1.  Plaintiff filed a claim for unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 et seq.

2.  On January 2, 2014 the Court entered its Findings of Fact and Conclusion of Law (Doc.#81) finding that Plaintiff did work hours for Defendants for which she was not compensated and entered an order in favor of Plaintiff and against Defendants in the amount of $38,100.49 in unpaid wages, $38,100.49 in liquidated damages and reasonable attorneys fees and expenses. The Court had previously had entered an Order on a Motion for Summary Judgment finding the actions of the Defendants were willful.

3.  Defendants appealed the Court's Final Order which included the Court' Summary Judgment Order to the Fifth Circuit Court of Appeals. On March 25, 2015, the Fifth Circuit Court of Appeals entered an Order holding that this Court's decision of whether the actions of Defendants were willful was a factual question and remanded it to this Court for trial on that issue.

4. The sole issue for this Court to resolve is whether the Defendants violations of the FLSA were willful. It is undisputed that the employee, Dana Mohammadi, ("Plaintiff" or "Mohammadi") has the burden of demonstrating willfulness for the three (3) year limitations period to apply. See *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

5. The standard of willfulness that has been adopted by the Supreme Court for purposes of section 255 is set forth in *Trans World Airlines, Inc. v. Thurston* 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1965) – the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

6. Decisions by courts applying the standard set forth in *Thurston* have emphasized the "reckless disregard" aspect of the test. See *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988); *Halferty v. Pulse Drug Co.*, 826 F.2d 3-4 (5th Cir. 1987) ; *Peters v. City of Shreveport*, 818 F.2d 1148, 1167-68 (5th Cir. 1987), *cert. dismissed*, 485 U.S. 930, 108 S. Ct. 1101-02, 99 L. Ed. 2d 264 (1988).

7. In the *Morales v. Frio Foods, Inc.* 899 F2d. 1407 (5th Cir. 1990) the trial court decided because Frio Foods had discussed minimum wage requirements with the Texas Economic Employment Commission and had reviewed some "brochures and pamphlets" on the topic that Frio had not acted with "reckless disregard."

8. Obviously, the finding of "willfulness" is fact specific.

9. The credibility of the witnesses is paramount. Resource Health Service, Inc. and its principals, Rose Nwabuisi and Austin Nwabuisi (all referred to as "Resource") is based in Houston, Texas. Resource wished to expand its operation as a number of contracted clients in Houston desired the services of Resource in San Antonio. The opening of a satellite office was new to

Resource and its officers so it took a number of precautions. When it opened its office in San Antonio it was initially staffed by three (3) persons of whom Mohammadi was one. Mohammadi was charged with the oversight and management of the San Antonio office.

10. It is undisputed that the Mohammadi was the senior person in San Antonio. Each of the new staff including Mohammadi, was provided with one week extensive training in Houston to become familiar with the policies, practices and procedures of Resource, including the practice of time keeping, record keeping and overtime policies. Mohammadi signed each of the documents acknowledging she receive this training and understood the policies and procedures (D-10). Plaintiff was charged with the responsibility of ensuring that these procedure, policies and practices were followed in the San Antonio office. As with the opening of all new offices there was some teething problems, including that with the time clock. However, the polices and procedures, safe checks and safe guards to ensure that time was fully paid as set by Resource were as follows:

    A)    There was standard form documentation prepared for each activity, including marketing;

    B)    A time clock was installed where each employee was expected to punch-in and punch-out. The work day was 8:30 a.m. to 5:00 p.m. with 30 minutes for lunch. The employee was to date and sign the card;

    C)    Each visit to a patient had to be documented including time spent with the patient;

    D)    At each pay period patient visit records, mileage expense, reimbursement of expense requests and time cards were discussed and reviewed with Martha Lewis, a subordinate of Plaintiff to ensure time was accurately recorded as pay was not generated in San Antonio;

    E)    Each employee and Martha Lewis were to sign the pay cards advising the Houston office that all time had been accounted for, patient visit records were accurate and the mileage and expenses were reimbursable;

    F)    These records would then be transmitted to Houston;

G) Resource contracted a certified public accountant to generate payroll from these records;

H) If overtime was required, a written request was to be made to Resource in Houston to authorize the overtime;

I) If a dispute or issue or any pay issue arose they were to be addressed in writing to Resource in Houston;

J) The person charged with the responsibility to ensure these procedures and practices were followed in San Antonio was the Plaintiff.

11. At the initial trial, Plaintiff requested that exhibits be admitted at trial that was not on the Exhibit List. (P-16 to P-22) These exhibits were a variety of e-mails which had a alleged time stamp after working hours which Plaintiff used to persuade the Court that she was working after 5:00 p.m. The e-mails were falsified or created by Plaintiff. A true and correct copy of the e-mails were produced by Defendants at this trial to show the Court that each of the e-mails were generated during working hours.(D-59) Plaintiff asserts that she notified Resource in writing that she was not being paid for overtime, however, not a single e-mail or document could be produced. When pressed on the witness stand Plaintiff testified that such documents did exist, were in her possession and that she simply failed to produce them, a violation of both F.R.C.P. 26(a) and a failure to respond fully and completely to requests for production. (See D-4 Request for Production No. 7).

12. No documents were produced where Mohammadi sent any communication to Resource alleging her pay was incorrect or there was a violation of the FLSA prior to her temination because none exists.

13. During the time of Mohammadi's employment at Resource, Sharika Johnson, another employee, brought a claim against Resource under the FLSA seeking the same damages and asserting the same claims as Mohammadi in this suit. P-24 is a copy of the docket sheet and

selective pleadings from that case. There are thirty-two (32) docket entries in this case showing substantial activity in the case, not only mandatory discovery but elective discovery and motions to compel. Resource retained the services of Paul Matula, of Hermann, Taube and Sommers, LLP. Mr. Matula specializes in employment law. The result of that case reaffirmed to Resource that their policies and procedures put in place and that the practices of Resource were in compliance with FLSA. The case was dismissed for a payment of $455.00 barely covering the filing and service fees let alone attorney's fees accrued in the case.(D-57, D-58).

14. Resource does have some patients that do need the services of a Licensed Vocational Nurse "LVN" to conduct visits outside normal working hours. These LVN visits are performed by contracted LVNs who must record on a Patient Visit Record all pertinent information of which redacted examples are at D-54. Resource testified that Mohammadi approached Resource requesting whether she could undertake LVN visits outside of regular working hours for extra money. This testimony is uncontroverted. These visits last somewhere between 30 minutes to an hour and average 45 minutes. The average pay for each visit is normally between $30.00 and $35.00 per visit. This work is generally performed by contracted LVNs and not employees of Resource. When asked, Rose Nwabuisi accommodated Mohammadi, believing she was doing Mohammadi a favor, and granted her the right to conduct the LVN patient visits outside of working hours and paid her according to the contract rate. Resource did not believe or know that the hours for these visits would be classified as overtime because these were generally performed on a contracted basis. In this case, Mohammadi testified that each patient visit she performed, regardless whether it was performed during normal business hours or after normal business hours, that she expected to be compensated in addition to her wage, the contracted rate of $30.00 to $35.00

per hour. However, in the underlying trial Plaintiff testified diametrically opposed, verifying the contract rate for these visits would only be for after hours work. ( See Transcript Page 141 Line 12-25, Page 146 Line 1-3 and D-1 paragraph 10, 11)   Resource, simply believing it was assisting Mohammadi allowed her to to perform the patient visits outside the normal business hours and paid her the appropriate contract rate unaware that it could be considered a violation of the FLSA.

15. Resource patient visits are document intensive. Resource is subject to audit at any time by private, State and Federal agencies.  If there is not the documentation to support the work, Resource is subject to reimburse these agencies.  Therefore, without the necessary documentation Resource cannot obtain reimbursement from its contract insurers, State or Federal government.  Further, with Resource's contracts with the State of Texas, the State of Texas does not pay or reimburse Resource for overtime work for providers.  Mohammadi's claims for overtime for "marketing" are by in large unsupported by documentation.  He claims for providing service to patients save and except the patient visit records at D-54 for which she was paid at the contract rate are unsupported by mandatory required documentation.

16. There is a distinction between "providers" and LVN.  Providers are generally paid at $7.95 per hour and perform general skills such as cleaning, bathing, shopping and the like.  Resource can only be reimbursed for provider work at $7.95 or at the current minimum rate that the State of Texas pays.  To ensure that Resource remains profitable, Resource complies with the State requirements, however inhumane others may find the requirements that are set forth by the State.  Resource employs "floaters" who are providers that will cover the schedule of other providers that cannot meet a required commitment for a patient for whatever reason.  The State grants to Resource and like companies, up to 48 hours for a floater to undertake the service.  Mohammadi testified that she

would perform provider work outside business hours for which she now claims compensation but there is no documentation. This would be a direct violation of Resource's policies and for a justifiable business reason. First all visits must be documented, Second, if Resource permitted LVNs to attend and perform "provider" services Resource would be reimbursed from its insurers and the State of Texas the sum of $7.95 per hour while it would have to pay the LVN a basic rate in excess of $17.00 per hour and, if performed outside business hours the rate of in excess of $25.00 per hour quickly bankrupting Resource. The Defendants did not believe it was in violation of the FSLA because it was simply complying with what the State dictates and pays.

17. Neither knowledge of the FLSA's potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness, e.g. *Mclaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985); *Mireles v. Frio Foods,* 899 F.2d 1407, 1416 (5th Cir. 1990). An employer that "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent, *McLaughlin*, 486 U.S. at 134-35, as is an employer that, without prior notice of an alleged violation, fails to seek legal advice regrading its payment practices, e.g. *Mireles*, 899 F.2d. At 1416. Employers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention. See. e.g. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 $ n.24 (5th Cir. 2009) (citing cases). Failure to consult an attorney, without prior notice of alleged FLSA violations, does not constitute willfulness. *Mireles,* 899 F.2d at 1416. *Reich v. Newspapers fo New Eng.* 44 F.3d 1060, 1079, 2 WH Cases2d 897 (1st Cir. 1995) (affirming finding of lack of willfulness despite testimony that employees were reprimanded for reporting more than forty (40) hours per week but employer paid overtime to those employees who did report hours over forty (40), where employee

claimed that it paid for all reported overtime while discouraging its use. *Cox. v. Brookshire Grocery Co.* 919 F2d 354, 355, 30 WH Cases 216 (5th Cir. 1990) ; *Mireles v. Frio Foods,* 899 F.2d 1407, 1416, 29 WH Cases1265 (5th Cir. 1990) (affirming finding that violation was not with respect to allegedly illegal waiting time pay practices where employer had discussed FLSA with state agency and had reviewed some publications on topic; and holding that failure to sell legal advice, negligence and acting unreasonably do not constitute knowing or reckless disregard for law.   *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F3d 1128, 6WH Cases2d 609 (10th Cir. 2000) (finding alleged on-call time violation not willful); *Gilligan v. City of Emporia*, 986 F2d 410, 413, 1 WH Cases2d 425 (10th Cir. 1993) (holding alleged on-call time violation not willful.)   *Reich v. Department of Conservation & Natural Res.* , 28 F.3d 1076, 1084 2 WH Cases2d 385 (11th Cir. 1994) (finding failure of department to police its overtime prohibition for conservation officers not so reckless that court can overrule district court finding that it was not willful, nut more akin to negligence.  *Lopez v. Corporation Azucarera de P.R.*, 938 F2d 1510, 1515, 30 WH Cases769 (1st Cir. 1991) (finding FLSA violations not willful based on unreasonableness alone); *Mills v. Maine*, 853 F. Supp. 551, 555, 2 WH Cases2d 175 (D. Ne. 1994) (holding that more flagrant conduct than unreasonable behavior is required for finding of willfulness; briefing by DOL and inadequate monitoring of changes in law unreasonable but not reckless to comply with FLSA in classifying probation officers as exempt.)   In *Zannikos v. Oil Inspections (USA) Inc.*, 605 Fed. App. 349 (5th Cir. 2015), The plaintiffs argue that Oil Inspections recklessly disregarded whether marine superintendents were exempt from the FSLA. They allege that Oil Inspections knew of the FLSA's potential applicability, as demonstrated by its employee handbook; failed adequately to research the statute's applicability, and failed to consult with attorney's or the DOL on the matter.  These allegations do not suffice to

demonstrate willfulness. The plaintiffs have failed to put forth evidence that Oil Inspections knew that it was violating the FLSA or recklessly disregarded a potential violation.

18      Plaintiff further complains that she attended lunches and dinners for which she was not paid. As Rose Nwabuisi testified this was not mandatory for Plaintiff. In fact, Plaintiff requested to attend the dinners for which Resource paid the bill. Resource was unaware that this would be considered "work related" activity as Rose Nwabuisi was simply having dinner with friends who also happened to be clients and no work was discussed.

19.     The Plaintiff's attempt assert that Resource is a sophisticated enterprise which employs over five hundred (500) employees with annual revenues exceeding $5,000,00 and that because Resource is a sophisticated enterprise and understand the concept of overtime its violations were willful. In *Wellman v. Grand Isle Shipyard,, Inc.* 2015 U.S. Dist. LEXIS 60631 (May 6, 2015) plaintiffs ran an similar argument. Plaintiffs argue that GIS acted with reckless disregard because GIS "is no unsophisticated small operation" and "certainly the black letter rule that hourly employees are entitled to overtime. Thus [GIS] was clearly on notice of a potential FLSA violation, and its decision to not pay its hourly Project Managers overtime without doing anything else is at the very least reckless disregard." Clearly, plaintiffs cannot rely solely on the fact that GIS "is no unsophisticated small operation" in order to establish willfulness at trial. See *Zannikos*, 205 U.S. App. LEXIS 4986, 2015 WL 1379882, at 10.

## CONCLUSION

20.     The credibility of Plaintiff must be questioned with the falsified e-mails, her diametrically opposed testimony under oath concerning payment for patient visits, and the lack of mandatory required documentation. Plaintiff has failed to met her burden to show that the conduct of

Defendants was "willful" under standards set forth by the Supreme Court. The two (2) year limitation of statute of limitations applies and the prior judgment of this Court should adjusted accordingly.

Respectfully submitted,

GLENN J. DEADMAN, P. C.
509 S. Main Avenue
San Antonio, Texas 78209
(210) 472-3900-Telephone
(210) 472-3901-Facsimile
gjdeadman@aol.com

Glenn J. Deadman
SBN: 00785559

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via the court e-filing system on this the 8th day of January 2016 to the following:

**Philip Moss**
EQUAL JUSTICE CENTER
8301 Broadway, Suite 309
San Antonio, Texas 78209
*Counsel for Plaintiff*

Glenn J. Deadman