IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANA D. MOHAMMADI, | § § | |
| Plaintiff, | § § | |
| v. | § § | 5:12-CV-042 RP |
| AUGUSTINE NWABUISI, ROSE NWABUISI, RESOURCE HEALTH SERVICES, INC. d/b/a RESOURCE HOME HEALTH SERVICES, INC., and RESOURCE CARE CORPORATION. | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the above entitled cause of action. The parties appeared for a bench trial and the Court heard testimony and evidence on December 7, 2015. Plaintiff and Defendants submitted written closing arguments and proposed findings of fact and conclusions of law. Having considered all of the evidence, as well as the post-trial briefing, the Court enters the following Memorandum Opinion and Order.

### I.  Procedural Background

Plaintiff Dana D. Mohammadi alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (First Am. Compl., Dkt. 24.) Specifically, Plaintiff contends that Defendants willfully failed to pay her overtime compensation. The only question before the Court now is whether Defendants' violation was willful. If so, a three year limitations period applies. 299 U.S.C. § 255(a). Otherwise, the limitations period is two years. *Id.*

United States District Judge David Ezra previously granted Plaintiff's Motion for Partial Summary Judgment. (Order, Dkt. 46.)[1] In doing so, he found that there was no genuine dispute that (1) Defendants violated the FLSA by failing to pay overtime compensation (*id.* 8-19, 23-24); (2) the violation was willful, entitling Plaintiff to a three year statute of limitations (*id.* 29-30); (3) Plaintiff was entitled to liquidated damages (*id.* at 24-26); and (4) Defendants Rose Nwabuisi and Augustine Nwabuisi are individually liable (*id.* at 26-29). With regard to the issue of willfulness, Judge Ezra found that "Defendants were on notice that their actions were governed by and potentially violated the FLSA, and yet they failed to take steps—such as securing legal advice from a competent professional—to ensure . . . compliance." (*Id.* at 29-30.) Accordingly, Judge Ezra conclude[d] that Defendants either knew or acted with reckless disregard as to whether their policies were in violation of the FLSA, entitling Plaintiff to a three-year statute of limitations." (*Id.* at 30.)

On September 24 to 26, 2013, this case was tried before Judge Ezra. Given that Plaintiff had been previously awarded summary judgment on the issues of liability and willfulness, "[t]he principal issue in dispute during the trial was the number of improperly compensated and/or uncompensated hours Plaintiff worked." (Findings Fact & Conc. Law 1, Dkt. 81.) Judge Ezra awarded Plaintiff $38,100.49 in unpaid wages, $38,100.49 in liquidated damages, and reasonable attorney's fees and costs. (*Id.* at 58.)

Defendants appealed. The Fifth Circuit Court of Appeals affirmed the award of summary judgment on the issue of whether Defendants were liable under the FLSA and on the issue of whether Plaintiff is entitled to liquidated damages. *See Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). However, the Court of Appeals held that "[g]enuine disputes of material fact exist for the issue of willfulness" and "[a]ccordingly, whether the three year

---

[1] Judge Ezra also granted in part Defendants' partial motion for summary judgment with regard to issues not relevant here.

limitations period applies must be resolved by trial." (*Id.*) The case was remanded and, on December 7, 2015, the Court held a one day bench trial limited to the issue of willfulness.

## II. Findings of Fact

### a. Defendants' Healthcare Services Business

Defendants Resource Health Services, Inc. d/b/a Resource Home Health Services, Inc. and Resource Care Corporation (collectively "Resource") are Texas based corporations that provide a range of in-home healthcare services, including the provision of nurses. (Stipulation of Facts ¶ 1, Dkt. 123-1.) Resource Health Services, Inc. has offices in Houston and San Antonio, Texas; Resource Care Corporation has an office in Austin, Texas. (*Id.*) Both corporations are wholly owned by Defendant Rose Nwabuisi, who is also the Nurse Administrator in charge of the nurses. (*Id.* ¶ 2.) Defendant Augustine Nwabuisi is the CEO of both corporations. (*Id.*)

Resource has over 500 employees and its annual revenues exceed $5 million. (*Id.* ¶ 3.) Resource has contracts with insurance companies and with states and federal agencies, including the Texas Department of Aging and Disability Services ("DADS"). (*Id.* ¶ 4.) These organizations refer patients to Resource for home healthcare services. (*Id.*)

When a patient chooses to use Resource for his or her home healthcare services, a caseworker from a contracting agency dictates which services Resource is authorized to provide to that patient. (*Id.* ¶ 5.) Resource employs both licensed vocational nurses ("LVNs") and non-licensed caretakers called "providers." (*Id.* ¶ 6.) The former perform skilled nursing tasks such as giving injections and dressing wounds; the latter perform non-licensed services such as assistance with bathing, dressing, or preparing a meal. (*Id.*)

### b. Plaintiff's Employment with Defendant

Plaintiff, who is an LVN, was one of the three employees hired to staff Resource's San Antonio Branch office when it first opened in June of 2009. (*Id.* ¶ 7.) Plaintiff worked in that

office from June 16, 2009, to November 15, 2010. Plaintiff was later re-hired to work in Resource's Austin office in October of 2011. (*Id.*)

For her work, Plaintiff was paid a standard hourly rate. Plaintiff received two raises over the course of her first fifteen months of employment with Resource. (*Id.* ¶ 15.) She was initially hired at a rate of $15 per hour which was later raised to $23 per hour. (*Id.* ¶ 15.) Plaintiff was rehired in October 2011 at a rate of $25 per hour. (*Id.*)

Plaintiff was hired to do work as a Primary Home Care ("PHC") Field Supervisor for Providers and as an LVN Case Manager. (*Id.* ¶ 8.) She was responsible for ensuring the quality and safe delivery of primary home care services, coordinating the provision of primary care services, and ensuring efficient and effective case management. (*Id.*) Plaintiff had more experience in the home healthcare industry than any of the other San Antonio employees, and she therefore served as the other employees' supervisor and the office manager. (*Id.* ¶ 9.)

Plaintiff's regularly scheduled hours were from 8:30 a.m. to 5:00 p.m. with thirty minutes for lunch, Monday through Friday. (*Id.* ¶ 10.) However, Plaintiff testified that generally she started work around 8:00 a.m. and would work until between 8:00 and 9:00 p.m. She also testified that she was effectively always on call because she was responsible for arranging for substitute care when a provider was unable to make a patient visit. Plaintiff further testified that her duty to coordinate patient care frequently required her to personally fill in for providers who missed appointments. She testified that she was expected to make these after-hours patient visits in order to maintain the company's reputation and to ensure regulatory compliance.

Moreover, it is undisputed that Plaintiff often attended work-related marketing breakfasts, lunches, and dinners with caseworkers after hours. (*Id.* at 11.) It is further undisputed that Plaintiff purchased food and small door prizes for the marketing lunches, bingo games, and other marketing events, which were frequently after hours. (*Id.* ¶ 12.) Plaintiff has submitted into evidence receipts from items that she purchased for after-hour marketing events, calendars

indicating she attended those events, and marketing materials produced for those events. (Pl.'s Exs. 1-3.)

### c. Defendants' Compensation Policies

Resource's basic policy for paying their employees is undisputed: every two weeks employees would submit a time card listing the hours worked, which would then be processed by accountants based in Houston, so that the employee could be paid. However, Resource did not keep meticulous payroll records. Around half of the time cards Defendant produced during discovery did not list the day, month, or year to which they apply and many of the cards are illegible. (Stipulation of Facts ¶ 16, Dkt. 123-1.) In one instance, Defendants submitted the exact same time card for two different time periods. (*Id.* ¶ 17.)

The evidence indicates that Resource had a policy of paying its employees for only forty hours of work, regardless of the actual number of hours worked. Resource's payroll policy states, "This Organization does not pay overtime (to providers) or time and a half . . . All hours worked over forty hours (office employees) will be paid as none [sic] overtime hours." (Pl.'s Ex. 14.)  Martha Lewis and Plaintiff both testified at trial that it was Resource's practice to only pay employees for the time worked between 8:30 a.m. and 5:00 p.m. (with a thirty minute lunch). The payroll records submitted into evidence are consistent with that testimony. Defendants submitted numerous time cards which indicate that all San Antonio employees improbably worked from exactly 8:30 a.m. to exactly 5:00 p.m. each day of the week. (Pl.'s Ex. 4.) Similarly, the vast majority of Plaintiff's pay stubs improbably show that she was paid for either eighty or eighty-eight hours per pay period (depending on the number of work days in the pay period). (*Id.*)

Whatever Resource's payroll policy was, it is undisputed that Plaintiff, except for in a few rare instances, was paid for only forty hours of work each week. (Stipulation of Facts ¶ 19, Dkt. 123-1.) Similarly, it is undisputed that Plaintiff was never paid an overtime rate. (*Id.* ¶ 20.) This is

true even for weeks when Plaintiff's time card reflects that she worked more than forty hours per week. (*See* Pl.'s Ex. 4.) Finally, it is undisputed that the hours documented on Plaintiff's time cards do not reflect the hours she spent performing provider visits after hours. (Stipulation of Facts ¶ 18, Dkt. 123-1.) Accordingly, the record establishes that Plaintiff's time cards do not reflect all of the hours that she worked; that she was not paid for all of the hours documented on those cards; and, despite the fact that the time cards indicate that Plaintiff worked overtime, she was never paid an overtime rate.

### d. Defendants' Knowledge of the Instant FLSA Violation

Rose Nwabuisi testified that she understands the overtime requirements imposed by the FLSA. She claims that this familiarity with the FLSA comes from two decades working in the home healthcare industry. Nwabuisi testified that she understands that an employer is required to pay an employee for all the hours she works, including for all the hours reported on a time card. Moreover, Nwabuisi testified that she understands that if an employee works more than forty hours in a given week, the employee should be paid one and a half times the standard hourly rate each hour in excess of forty. Finally, Rose Nwabuisi testified that she has held this knowledge for over two decades.

The evidence establishes that Defendants were aware that Plaintiff worked substantial overtime. Plaintiff testified that she regularly spoke to Defendant Rose Nwabuisi on the phone outside of her regular work schedule. Plaintiff also testified that she repeatedly asked Nwabuisi to compensate her for the unpaid time that she was working, and that Nwabuisi promised that she would be paid in the future or otherwise "taken care of." Plaintiff also testified that she sent communications by fax to Resource's accountant in Houston requesting that she be compensated for the unpaid overtime hours she worked for the company. Additionally, Plaintiff testified that she faxed to Defendants calendars listing the after-hours marketing activities she performed, copies of receipts for marketing related expenses (including receipts indicating

purchases made outside of standard-hours work), and requests for mileage reimbursement for out of office work. Some of those documents have been entered into the record. (Pl.'s Exs. 1-3.)

Accordingly, the evidence establishes that Defendants understood the overtime requirements imposed by the FLSA and were aware that Plaintiff had worked overtime. Defendant Rose Nwabuisi, however, was unable to provide a credible explanation as to why Resource had never paid Plaintiff an overtime rate. In fact, she said she did not know whether Plaintiff had ever been paid an overtime rate, despite the fact that Defendants had already stipulated that Plaintiffs had not. At trial, Nwabuisi was shown a time card which stated on its face that Plaintiff should be paid for 106.5 hours, yet the corresponding pay stub only compensated Plaintiff for 96 hours, consistent with Defendants' practice of only paying for 8 hours per day. (*See* Defs.' Ex. 46.) Despite extensive questioning about this time card, Nwabuisi could not explain why Plaintiff was not paid any overtime for this pay period.

In her testimony, Defendant Rose Nwabuisi suggested that there was a policy of only paying overtime if the hours were authorized in advance. Yet, she gave inconsistent answers as to whether overtime hours which were not explicitly authorized but were recorded and known to management were required to be paid. She also gave an unclear answer as to whether the authorization needed to be in writing or could be provided verbally. Additionally, her suggestion that Resource had a policy of paying for authorized overtime was contradicted by the testimony of the other witnesses, both of whom indicated that Resource's policy was to pay no more than forty hours per week. It is also contradicted by Resource's employment manual which states that the company policy is not to pay overtime and does not provide any procedures for requesting authorization of overtime. (Pl.'s Ex. 14.) Finally, the Court notes that there is no evidence in the record indicating that Plaintiff or any other Resource employee has ever requested, received or been denied authorization to work overtime pursuant to the purported authorization requirement.

### e. Defendants' Knowledge of Other FLSA Allegations

Defendants had previously been sued in federal court by a former employee who alleged that Resource had violated her rights under the FLSA by failing to pay overtime, including not paying for time spent coordinating visits and making work related calls from a company cellphone. (Pl.'s Ex. 24.) Defendants learned of this lawsuit during the course of Plaintiff's employment with Resource. This other case was litigated for nearly two years and was settled shortly before trial. Defendant Nwabuisi testified that while she hired an attorney to defend this lawsuit, Resource took no actions to examine the company's pay practices, as she considered the allegations to be completely without merit. In fact, Nwabuisis testified at trial that to date, even after the filing of the action presently before the Court, Resource has not changed its pay practices in any way to ensure FLSA compliance.

### III. Conclusions of Law

### a. Standard for Willfulness

An FLSA claim is ordinarily subject to a two-year limitations period, but if the plaintiff can demonstrate that the violation was willful, then the limitations period is extended to three years. 29 U.S.C. § 255(a); *see also Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). Under the FLSA, the employee has the burden of demonstrating willfulness for the three-year limitations period to apply. *Mohammadi*, 605 F. App'x at 332. An FLSA violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Specifically, a violation is willful if an employer knows her pay structure violates the FLSA or ignores complaints brought to her attention. *Id.* (citing *Ikossi—Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 & n.24 (5th Cir. 2009)). A finding of willfulness requires more than is needed to prove negligence. *Id.* For example, the fact that an employer is a large and well-established business that was aware of its need to comply with federal law may

8

suggest that the employer was negligent in failing to ensure FLSA compliance, but it does not evince willfulness. *Id.* Moreover, a blanket policy against paying overtime, in of itself, does not evince willfulness, because the employer may have reasonably believed it was exempt from the FLSA's overtime requirement. *Id.* Finally, failure to seek legal advice, alone, without prior notice of the alleged FLSA violation does not prove willfulness. *Id.* at 332-33 (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)).

### b. Defendants' Violation of the FLSA Was Willful

In light of all of the evidence presented at trial, in particular the testimony of Defendant Rose Nwabuisi and the Court's assessment of the credibility of her testimony, the Court concludes that Defendants knew that Resource's compensation policies as applied to Plaintiff violated the FLSA. The evidence supports a finding that Defendants had actual knowledge of the fact that: (a) Plaintiff had frequently worked more than forty hours per week, (b) Plaintiff was as a rule not paid for hours worked in excess of forty in a week, (c) Plaintiff was not ever paid an overtime rate, and (d) failure to pay an overtime rate for hours worked in excess of forty in a week violates the FLSA. Moreover, the evidence supports a finding that Defendants did not reasonably believe Resource or its employees were exempt from the FLSA. Rather, the evidence supports a finding that Defendants were aware that the FLSA governed and affirmatively attempted to avoid complying therewith. Accordingly, the Court finds that Defendants knew their polices violated the FLSA, thus the violation was willful. *Mohammadi*, 605 F. App'x at 332 ("[E]mployers act willfully when they know their pay structures violate the FLSA. . . .").

Moreover, in light of all the evidence presented at trial, the Court concludes that Defendants had notice of the possibility that their pay policies may have violated the FLSA, but continued to recklessly disregard the possibility that its policies violated the law. The evidence supports a finding that (a) Plaintiff communicated to Defendants that she believed she was not

being paid fully and (b) Defendants were put on notice of potential noncompliance with the FLSA after the filing of a similar lawsuit. The evidence also supports a finding that after being made aware that their policies may have violated the FLSA, Defendants continued to pay Plaintiff, as a matter of policy, only forty hours per week, with no regard to the number of hours documented on her time card or the number of hours of work she actually performed. Accordingly, the Court concludes that Defendants acted with reckless disregard as to the question of whether their payroll policies violated the FLSA and, thus, acted willfully. *See Mohammadi*, 605 F. App'x at 332 ("[E]mployers act willfully when they . . . ignore complaints brought to their attention.").

The Court concludes that Defendants acted willfully and thus a three year limitations period applies under 299 U.S.C. § 255(a).

## IV. Conclusion

Based on the foregoing findings of fact and conclusions of law, the Court **ORDERS** that judgment be entered in favor of Plaintiff and against Defendant in the amount of:

  (1) $38,100.49 in unpaid wages;

  (2) $38,100.49 in liquidated damages; and

  (3) Reasonable attorney's fees and costs.

Moreover, Plaintiff's Motion for Attorney's Fees and Costs on Remand, filed April 7, 2015 (Dkt. 103) is hereby **DISMISSED WITHOUT PREJUDICE.** Plaintiff is directed to file a motion for all of her reasonable attorney's fees and costs no later than fourteen days after the entry of

judgment, pursuant to Local Rule CV-7(j)(1). Any objection to a motion for attorney's fees shall be filed on or before 14 days after the date of filing of the motion, pursuant to Local Rule CV-7(j)(2).

**SIGNED** on March 22, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE